[L A. No. 16181. In Bank.—March 27, 1940.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS AND TRUST ASSOCIATION (a National Banking Association), Plaintiff, Cross-Defendant and Respondent, v. P. M. REIDY et al., Defendants, Cross-Defendants and Respondents; HAMMOND LUMBER COMPANY (a Corporation), Defendant, Cross-Complainant and Appellant; ONNIK TIMOURIAN, Defendant and Respondent.

Horton & Horton and Joseph K. Horton for Appellant.

Freston & Files, Edmund Nelson, Howard Waterman, Benjamin I. Block, Ralph E. Lewis, William Ellis Lady, H. C. Millsap and Y. B. Arsen for Respondents.

EDMONDS, J.—This controversy presents only the question whether the appellant, which had a junior lien upon certain real property, is entitled to the income of the property while the respondent bank was foreclosing its senior encumbrance.

The first mortgage was executed in 1925 by the then owner of the property to secure the payment of a note for $80,000 in favor of the respondent Reidy and his wife. About the same time several junior encumbrances were recorded, one being a deed of trust to secure a note of the owner in favor of Hammond Lumber Company. Later, the Reidys borrowed $70,000 from the bank's predecessor, and to secure the loan gave the $80,000 note and mortgage as collateral security.

Upon default in the payment of the note of which he was a payee, and notwithstanding the fact that the mortgage was still under pledge to the bank, P. M. Reidy commenced a suit for its foreclosure. The bank, which was named as a defendant in this action, filed a cross-complaint against the mortgagor and several encumbrancers, including the Hammond Lumber Company, asking that it be permitted to foreclose the mortgage in order to protect its security as the pledgee thereof. While the cause was awaiting trial, Hammond Lumber Company, which had meanwhile foreclosed its junior encumbrance, a deed of trust, and became the purchaser at the sale, received the trustee's deed to the property. Later, when the foreclosure action came to trial, the Hammond Company stipulated that the pledged mortgage was prior to any lien or interest in the property which it might assert.

On January 31, 1929, a decree of foreclosure was entered, adjudging that the sum of $70,000 borrowed by the Reidys from the bank was due and owing; that payment thereof was secured by pledge of the mortgage sought to be foreclosed; and that the sum due on the mortgage was $87,512, exclusive of certain items of interest and costs. Among other things, the decree ordered a sale of the property by a commissioner, and application of the proceeds of sale as follows: (1) To payment of costs and expenses of sale; (2) to payment of the amount due the bank from the Reidys; (3) to payment to the Reidys of any amount due them after paying the claim of the bank; and (4) the surplus, if any, to be paid into court. Upon appeal by a junior encumbrancer, the decree was affirmed, with a slight modification not here material. (*Reidy* v. *Young*, 119 Cal. App. 322 [6 Pac. (2d) 112].) At the foreclosure sale thereafter held, the bank bid in the property for $70,000 and on March 5, 1930, at the expiration of the period of redemption, received a commissioner's deed. The present

action was commenced by the bank for the purpose of foreclosing this deed as a mortgage.

The complaint alleged that although the certificate and deed were absolute in form, they were accepted by the bank as additional security for the Reidy loan, and constituted "a further mortgage of the real property", and that payment of the balance due on the loan was in default. The prayer was for foreclosure and judgment against the Reidys in the amount of any deficiency.

Separate answers were filed by the several defendants, and Reidy and the Hammond Lumber Company each filed a cross-complaint. The latter alleged that, unknown to it, the bank had accepted the commissioner's certificate and deed only as security, and they constituted nothing more than a further mortgage; that, therefore, it, the Hammond Company, was the owner of the property at all times subsequent to April 3, 1928 (the date of the trustee's deed to it), and as such owner was entitled to recover from the bank all rents, issues, and profits of the property subsequent to March 5, 1929, the date of the certificate of sale under the decree of foreclosure.

The cause was tried in September, 1932, but was reopened several times for the admission of further evidence, with the result that findings and decree were not signed until June, 1936. The decree granted the bank the relief which it sought and directed a foreclosure as prayed.

With respect to the issues made by the cross-complaint of the Hammond Lumber Company, it was conceded that the net income in controversy received from the operation of the property from June 30, 1930, to February 1, 1936, amounted to $15,866, but the court concluded that the Hammond Company was not entitled to this profit. It found that a receiver appointed in the prior foreclosure action had operated the property from a time prior to March 5, 1929, to April 26, 1930; that on the latter date possession of the property was delivered to the bank, and the bank thereafter continued to operate it "as the holder of the first mortgage lien" thereon, and "as agent of said P. M. Reidy". It is not true, the court expressly found, that the Hammond Company has at all times since April 3, 1928, or at any time since March 5, 1929, been the owner of the property, and it is not true that at all of said times, or at any time since March 5, 1929, that company was entitled to rents, issues, and profits thereof, or that the

bank was indebted to it in any sum. The decree adjudged that the company had no right, title, interest, lien, or claim to the property, or right of redemption therein.

The Hammond Company alone appealed from the decree. In support of its claim that it should have been given judgment against the bank for income received from the property it contends that it was not debarred of its rights in the property by the foreclosure of 1929 and the issuance of the commissioner's certificate and deed, because as to it that foreclosure was collusive, fraudulent, and ineffective for any purpose.

The charge of fraud is grounded upon the following facts which, appellant states, were established on the trial by uncontradicted evidence: At the time of the 1929 foreclosure sale the value of the real property, according to the bank's appraisal, was from $35,000 to $40,000. The bank planned to bid up to the latter sum for it, and to take a deficiency judgment against P. M. Reidy for the balance due on his loan. On the morning of the sale, however, Mr. Reidy called at the bank and persuaded it to increase its bid to $70,000 in order to "protect him with reference to possible redemption by other parties that were interested". In return he agreed to give the bank $10,000 and additional security. The bank carried out its part of the agreement but all of Mr. Reidy's promises were not fulfilled and the bank was therefore compelled to seek redress by filing the present action for further foreclosure.

The court found that immediately prior to the commissioner's sale, at the request of P. M. Reidy, the bank agreed that for the benefit of P. M. Reidy it would bid in the property for the sum of $70,000 and that the commissioner's certificate of sale and the deed to be subsequently delivered would be held by the bank as security for the payment of his indebtedness to it.

The effect of this bid, the appellant urges, was to stifle competition and to deprive it of an opportunity to either bid for or redeem the property; hence the foreclosure sale was irregular and unfair. Moreover, says the appellant, it did not conform to the foreclosure decree because the bank did not credit the amount bid for the property upon the Reidy loan, as the decree directed, but, instead, sued to foreclose its commissioner's deed as a mortgage.

▇ It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties. Sham bidding and the restriction of competition are condemned, and inadequacy of price when coupled with other circumstances of fraud may also constitute ground for setting aside the sale. (*Haley* v. *Bloomquist,* 204 Cal. 253 [268 Pac. 365]; *Dealey* v. *East San Mateo Land Co.,* 21 Cal. App. 39 [130 Pac. 1066]; *Bernheim* v. *Cerf,* 123 Cal. 170 [55 Pac. 759]; *Packard* v. *Bird,* 40 Cal. 378; *Goodenow* v. *Ewer,* 16 Cal. 461 [76 Am. Dec. 540].) ▇ However, where on foreclosure of a mortgage a deficiency judgment cannot be had, and that was the situation confronting the bank (*Reidy* v. *Young, supra*), it is not unusual for a mortgagee to make a bid for the property in the amount owing on the debt. The sale is not rendered fraudulent by the fact that such bid exceeds the value of the property at the time of sale and was made with the intent of discouraging bidding or redemption by junior encumbrancers in the hope of finally securing payment of the debt because of a rise in value of the property in the future. So long as a bid is legitimately made, there is no theory which requires the creditor to bid only a small amount, raising it by degrees only to that required to meet competition. And the situation is not altered where a pledgee of a mortgagee, acting in good faith for the best interests of both, makes the same bid the mortgagee would himself have made.

▇ Moreover, the appellant is not entitled to the relief demanded by its cross-complaint even if it were correct in its contention that the bid of the bank was fraudulent. The Hammond Company was a party to the foreclosure action and the pleadings fully disclosed the relations of the other parties and showed that the bank was asking for a decree of foreclosure as a pledgee of the mortgage. The terms of the mortgage and also those of the bank loan were known to the appellant. It also knew, or should have known, the approximate value of the property. Yet it did not challenge the foreclosure decree, which was affirmed on appeal (*Reidy* v. *Young, supra*), nor did it complain at the time of the foreclosure sale

that the bank's bid was excessive, or that it should bid only an amount equal to the actual value of the property and rely upon a deficiency judgment for the balance of the debt. It made no effort to set aside the sale either by motion or by an independent action in equity or seek to establish a right of redemption. It advanced no claim whatsoever until the present action was brought by the bank revealing a private agreement with the pledgor as to the manner in which the pledge should be collected, and even then it did not seek to have the foreclosure sale vacated, nor did it offer to redeem the property for an amount equal to its value at the time of the foreclosure sale.

■ Upon no theory may it be held that appellant is entitled to the rent collected by the bank. The foreclosure sale was at most voidable, and a purchaser at such a sale is entitled to the income of the property during the period of redemption. (Sec. 707, Code Civ. Proc.; *Reidy* v. *Young, supra.*) The fact that the bank made the purchase and took title as a pledgee of the mortgagee was a matter of concern only to itself and its pledgor. It conferred no additional rights upon junior encumbrancers, and it did not render either the foreclosure decree or the sale vulnerable to attack by other parties.

■ Section 3006 of the Civil Code declares the right of a pledgee to collect collateral security held in pledge, and it is the law of this state that a pledgee who becomes the purchaser at a foreclosure sale under a collateral mortgage acquires absolute title to the property, although he is under a duty to account to the pledgor for the proceeds. (*Kelly* v. *Matlock,* 85 Cal. 122 [24 Pac. 642]; *Hoult* v. *Ramsbottom,* 127 Cal. 171 [59 Pac. 587]; *Johnson* v. *Mortgage Guar. Co.,* 117 Cal. App. 416 [4 Pac. (2d) 208]; *McArthur* v. *Magee,* 114 Cal. 126 [45 Pac. 1068]; *Beatty* v. *Pacific States etc. Co.,* 4 Cal. App. (2d) 692 [41 Pac. (2d) 378]; *Reidy* v. *Young, supra.*) Here the duty of the bank to account to its pledgor, as affected by the pledgor's failure to carry out the terms of the agreement at the time of the sale has been met by the provisions of the decree of foreclosure, from which no appeal has been taken by either the bank or the pledgor.

The decree is affirmed.

Gibson, J., Carter, J., Shenk, J., Curtis, J., and Waste, C. J., concurred.