[No. H036140. Sixth Dist. Dec. 21, 2011.]

JONAS Z. LONA, Plaintiff and Appellant, v.
CITIBANK, N.A., as Trustee, etc., et al., Defendants and Respondents.

**COUNSEL**

Law Office of Adlore V. Clarambeau and Adlore V. Clarambeau for Plaintiff and Appellant.

AlvaradoSmith, John M. Sorich, S. Christopher Yoo and Geoffrey C. Brethen for Defendants and Respondents.

## Opinion

**WALSH, J.**[*]—Responding to a mortgage broker's "marketing enticement," a homeowner agreed in January 2007 to refinance his home for $1.5 million. With a monthly income of only $3,333, the homeowner quickly fell behind in his monthly payments of $12,381.36. In August 2008, the home was sold at a nonjudicial foreclosure sale. The homeowner filed an action against the lender, the loan servicer, and others to set aside the trustee's sale claiming that he was a victim of predatory lending. He claimed the transaction was invalid because the loan broker ignored his inability to repay the loan, and, as a person with limited English fluency, little education, and modest income, he did not understand many of the details of the transaction, which was conducted entirely in English.

In response to the homeowner's claim, the lender and the loan servicer moved for summary judgment, arguing that the homeowner had failed to tender the amounts due on the loans, which was required to set aside the sale; that none of the exceptions to the tender requirement applied; and that the homeowner voluntarily entered into the loan agreements and was personally responsible for the loss of his home. The trial court granted summary judgment to the lender and loan servicer.

■ We will reverse the summary judgment. In doing so, we define the elements of an equitable cause of action to set aside a foreclosure sale and exceptions to the requirement that the borrower tender any amounts due under the loan. We hold that summary judgment was improper because the homeowner presented sufficient evidence of triable issues of material fact with regard to the alleged unconscionability of the transaction and the motion did not address a pertinent exception to the tender requirement, which the homeowner had raised in his complaint.

### Parties and Issues on Appeal

In August 2008, the home of plaintiff and appellant Jonas Z. Lona (Lona) was sold at a nonjudicial foreclosure sale. Three months later, Lona filed this action against the lender, the trustee, the mortgage broker, and the servicer of the loan, alleging a variety of claims, including a cause of action to set aside the trustee's sale.

In May 2010, Citibank, N.A. (the lender), and EMC (the loan servicer) filed a motion for summary judgment that challenged the only remaining

[*]Judge of the Santa Clara Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

claim against them, the cause of action to set aside the trustee's sale. They argued that Lona (1) had failed to make a valid tender offer, which was required to set aside the trustee's sale; (2) had failed to rebut the presumption that the trustee's sale was valid with evidence of irregularity in the sale procedure; and (3) had voluntarily entered into the loans. Finding no triable issue of material fact, the trial court granted the motion for summary judgment.

On appeal, Lona argues that the court erred in granting summary judgment because (1) the court was biased against Lona and its ruling was based on "extraneous" factors regarding the conduct of the case that were unrelated to the motion and (2) the ruling ignored triable issues of material fact. After conducting a de novo review of the record, we will reverse the summary judgment.

### FACTS

The operative pleading, the second amended complaint, alleges that in January 2007, in response to the "marketing enticement" of mortgage broker First Net Mortgage (Mortgage Broker), Lona refinanced his home, which had an existing mortgage debt of $1.24 million.[1]

The refinancing consisted of two loans that totaled $1.5 million: a first loan for $1.125 million and a second loan for $375,000. In January 2007, Lona executed two notes and two deeds of trust in favor of Franklin Financial (Franklin). The deeds of trust granted Franklin a security interest, with the power of sale, in residential property located at 1143 Stony Brook Drive, Hollister, California (Property). The deeds of trust named First American Title as trustee.

The first loan ($1.125 million) was for a 30-year term, with a fixed interest rate of 8.25 percent for the first five years and an adjustable rate thereafter. The note, which was "interest only," specified that the monthly payments would be $8,451.75 for the first five years. After five years, the interest rate would adjust annually. The adjusted rates would be based on the LIBOR (London Interbank Offered Rate) plus 2.25 percent, could not increase by more than 1 percent per annum, and could not be less than 3.25 percent or greater than 13.25 percent.[2]

---

[1] The record does not contain any evidence regarding the previous mortgage debt, other than the amount of the outstanding balance, and does not indicate how long Lona owned the property before refinancing.

[2] In his brief on appeal, Lona misstates the amount of the first loan, as well as the terms of the loan. These misstatements of facts are based on the allegations of Lona's complaint, which are not evidence and for which there is no support in the evidentiary record. Moreover, the

The second loan ($375,000) was a fixed rate loan for a term of 15 years. The interest rate was 12.25 percent per year and the monthly payments were $3,929.61. The note included a "Balloon Payment Disclosure" on a separate form which stated that, assuming all payments were made on time, "a final balloon payment" of $327,009.91 would be due at the end of 15 years. Thus, at the end of that 15-year term, Lona would have paid $47,990.09 toward the principal.

With payments of $8,451.75 on the first loan and $3,929.61 on the second loan, Lona's monthly payments after refinancing totaled $12,381.36. The loans, which paid off Lona's prior $1.24 million mortgage and increased his indebtedness to $1.5 million, presumably generated $260,000 to cover fees and other payouts from escrow; however, the record does not indicate what happened to the $260,000.

Although married, Lona owned the Property as his sole and separate property. At the time he refinanced, he was approximately 50 years old. He had an eighth grade education in Mexico. He came to the United States in 1972 at age 15 and has lived here ever since. He testified through an interpreter at his deposition. His income was approximately $40,000 per year;[3] other sources of income included his wife's income. She owned a collection business; the amount of her income is not in the record.

The record does not contain copies of Lona's loan application. At deposition, Lona testified that the loan and title documents were in his name only and that when he signed the loan documents, he did not understand what he was signing; it "went very fast," and the mortgage brokers did not give him "too good of an explanation." Though Lona testified that the mortgage brokers did not explain what the documents were, that he did not ask, and that he signed at least one document without reading it, he also testified that he discussed the initial interest rate and the initial amount of his monthly payments with the mortgage brokers.

statement of facts in Lona's brief does not contain a single citation to the record. Each and every statement in a brief regarding matters that are in the record on appeal, whether factual or procedural, must be supported by a citation to the record. This rule applies regardless of where the reference occurs in the brief. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247 [19 Cal.Rptr.3d 416]; *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 [126 Cal.Rptr.2d 178] [record citations in statement of facts do not cure failure to include pertinent record citations in argument portion of brief].)

[3] According to Lona's opening brief, he worked for Monterey Mushrooms as a maintenance mechanic. There is no evidence of this in the record. Lona's brief contains other facts for which there is no support in the record. Factual matters that are not part of the record will not be considered on appeal and should not be referred to in the briefs. (Cal. Rules of Court, rule 8.204(a)(2)(C); *Banning v. Newdow* (2004) 119 Cal.App.4th 438, 453, fn. 6 [14 Cal.Rptr.3d 447].)

At unknown times, Franklin assigned its interest in the first loan to Citibank, EMC became the "servicer of the loan," and Quality Loan Service Corporation (Trustee) took over as trustee.

In June 2007, five months after signing the loan documents, Lona defaulted on the first loan. In September 2007, the Trustee recorded a notice of default. The notice of default identified the amount due under the first loan as "$33,725.40 as of September 17, 2007."

In January 2008, the Trustee recorded a notice of trustee's sale dated December 31, 2007, which set the trustee's sale for January 31, 2008. The trustee's sale was continued or postponed. Lona never cured the default and a trustee's sale was completed several months later. A trustee's deed upon sale was recorded in August 2008.

The second amended complaint alleges that Citibank purchased the Property at the trustee's sale, sought to forcibly evict Lona from his home, and filed an unlawful detainer action against him. The record does not contain any evidentiary documents that support these allegations. However, at the hearing on the motion for summary judgment, both counsel advised the court that the unlawful detainer action had been consolidated with this action, that Lona has "been living for free in this property for the duration of the action," and that he had not posted a "surety bond or security bond or any impound funds."

### PROCEDURAL HISTORY

Lona filed his original complaint in November 2008. The second amended complaint filed in July 2009 names Citibank, EMC, Mortgage Broker, and Franklin as defendants. Mortgage Broker and its principal, Ransome McKissick, filed general denials.

Citibank and EMC filed a series of demurrers challenging the pleadings. In September 2009, the court issued an order sustaining their demurrers to the second amended complaint in part. Although copies of the orders on the demurrers are not in the record, it appears undisputed that two other causes of action against Citibank and EMC (trespass and breach of the covenant of good faith and fair dealing) were dismissed as a result of their demurrers. According to the register of actions, Citibank and EMC answered the second amended complaint. However, a copy of their answer is not in the record.

In May 2010, Citibank and EMC filed a summary judgment motion challenging the cause of action to set aside the trustee's sale. In the motion, they argued that Lona had not made a valid tender offer, which was required to set aside the trustee's sale, and that none of the narrow exceptions to the

tender offer requirement applied. They also argued that Lona had voluntarily entered into the loans and that he did not overcome the presumption of validity by pleading and proving an irregularity in the trustee's sale and resulting prejudice.

In opposition to the motion, Lona argued that the loans were illegal and void from the day they were signed, because they did not consider his ability to pay. He argued further that defendants did not have a valid contract upon which to exercise their contract remedies, including foreclosure, and that no tender was required because the contract was illegal. He asserted that since his cause of action to set aside the trustee's sale was based on the illegality of the loan documents, he was not required to allege an irregularity in the trustee's sale. He argued that regardless of the voluntary nature of the transaction, he could not consent to an illegal contract. In his separate statement in opposition to the motion, Lona submitted additional undisputed material facts that (1) he earned only $40,000 per year when the loans were approved; (2) the total monthly payments on the loans ($12,381.36) were four times his monthly income; (3) only his income was considered in qualifying him for the loans; and (4) he had only an eighth grade education. Citibank and EMC did not file a reply.

At the hearing on the motion, Lona argued that he was never told the first loan was an adjustable rate loan; nor was he told how much the payments could be. He asserted that his English was limited and that no one explained the contract terms to him in either English or Spanish. He argued that there were factual disputes that precluded summary judgment regarding what he knew, what the loan brokers told him, and whether he was responsible for the representations regarding his income on the loan application. Citibank and EMC disputed the assertion that this was an illegal loan. They argued that Lona had not alleged any facts that would create triable issues and that he relied on conclusions and not facts, which was not enough to avoid summary judgment.

In response to Lona's argument that the lender should not have given him this loan, the court asked, "Isn't the cause of action really against Franklin Financial if there's fraud committed?" The court observed that although Franklin had been served, it had not appeared in the action, and that eight months previously the court had directed Lona to demand an answer from Franklin or take its default. In response, Lona argued that, as a successor in interest, Citibank had the same liability as Franklin and that Citibank was the party that was trying to enforce the contract.

The court was not convinced that there were any triable issues of material fact and granted the motion for summary judgment. The court stated that

"there are just bare allegations that someone didn't tell me what I was doing. And considering that Mr. and Mrs. Lona have had other real property that was the subject of a foreclosure that came in . . . for a similar kind of proceeding . . . , it's hard to believe that they, based on these bare allegations, aren't responsible for their own conduct." The court observed that Lona had not made any effort to depose the responsible parties or obtain evidence to prove his case and that summary judgment required Lona to present evidence that there was a material issue of fact in dispute, which he had not done.

**DISCUSSION**

## I. Standard of Review

Summary judgment provides "courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) A summary judgment motion "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "The pleadings determine the issues to be addressed by a summary judgment motion [citation], and the declarations filed in connection with such motion 'must be directed to the issues raised by the pleadings.' " (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 84 [20 Cal.Rptr.3d 1] (*Knapp*).)

The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar, supra*, 25 Cal.4th at p. 850, fn. omitted; see Code Civ. Proc., § 437c, subd. (c).) Defendants moving for summary judgment, like Citibank and EMC, meet this burden by presenting evidence demonstrating that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense to the action. (Code Civ. Proc., § 437c, subd. (*o*)(2); *Aguilar, supra*, 25 Cal.4th 826, 849–850, 853–854.) Once the defendant makes this showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists with regard to that cause of action or defense. (Code Civ. Proc., § 437c, subd. (*o*)(2); see *Aguilar*, at p. 850.) Material facts are those that relate to the issues in the case as framed by the pleadings. (*Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59, 67 [15 Cal.Rptr.2d 598].) In ruling on the motion, the court must consider the evidence and inferences reasonably drawn from the evidence in the light most favorable to the party opposing the motion. (*Aguilar, supra*, 25 Cal.4th at p. 843.)

We review an order granting summary judgment de novo, considering all the evidence set forth in the moving and opposition papers, except that to which objections have been made and sustained. (*Aguilar, supra*, 25 Cal.4th at p. 860; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) In undertaking our independent review, we apply the same three-step analysis as the trial court. First, we identify the issues framed by the pleadings. Next, we determine whether the moving party has established facts justifying judgment in its favor. Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable issue of material fact. (*Varni Bros. Corp. v. Wine World, Inc.* (1995) 35 Cal.App.4th 880, 886–887 [41 Cal.Rptr.2d 740] (*Varni*); see also *Burroughs v. Precision Airmotive Corp.* (2000) 78 Cal.App.4th 681, 688 [93 Cal.Rptr.2d 124].) "We need not defer to the trial court and are not bound by the reasons for [its] summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Knapp, supra*, 123 Cal.App.4th at p. 85.)

## II. General Principles Governing Nonjudicial Foreclosure

■ We begin by reviewing the statutory framework governing nonjudicial foreclosures. Civil Code sections 2924 through 2924k[4] "provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 [30 Cal.Rptr.2d 777] (*Moeller*).)

■ *Moeller* succinctly summarizes the procedure leading up to a nonjudicial foreclosure as follows: "Upon default by the trustor [under a deed of trust containing a power of sale], the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale. (Civ. Code, § 2924; [citation].) The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee. (Civ. Code, § 2924; [citation].) After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale. (Civ. Code, § 2924, subd. (b); [citation].) After the 3-month period has elapsed, a notice of sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale. (Civ. Code, § 2924f; [citation].)" (*Moeller, supra*, 25 Cal.App.4th at p. 830.)

"The statutes provide the trustor with opportunities to prevent foreclosure by curing the default. The trustor may make back payments to reinstate the loan up until five business days prior to the date of the sale, including any

---

[4] All further statutory references are to the Civil Code unless otherwise stated.

postponement. [Citations.] Additionally, the trustor has an equity of redemption under which the trustor may pay all amounts due at any time prior to the sale to avoid loss of the property. (§§ 2903, 2905.)" (*Knapp, supra,* 123 Cal.App.4th at pp. 86–87.)

■ "The manner in which the sale must be conducted is governed by section 2924g. 'The property must be sold at public auction to the highest bidder. [Citations.] [¶] . . . [¶] . . . A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender. [Citation.] Once the trustee's sale is completed, the trustor has no further rights of redemption. [Citation.] [¶] The purchaser at a foreclosure sale takes title by a trustee's deed. If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser. (. . . § 2924; [citation].)' " (*Knapp, supra,* 123 Cal.App.4th at p. 87, quoting *Moeller, supra,* 25 Cal.App.4th at pp. 830–831.)

The statutory scheme has three purposes: " '(1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' " (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 440 [129 Cal.Rptr.2d 436] (*Nguyen*), quoting *Moeller, supra,* 25 Cal.App.4th at p. 830.)

### III. *Bias and Reliance on Extraneous Matters*

■ In light of our holdings, which we explain below, we shall not address Lona's assertion that the court granted the motion because the judge was biased against him, except to note that this argument relies on matters that are outside the record, relating to other lawsuits in which Lona and his wife have been involved. Appellate review is generally limited to matters contained in the record. Factual matters that are not part of the appellate record will not be considered on appeal and such matters should not be referred to in the briefs. (Cal. Rules of Court, rule 8.204(a)(2)(C); *Banning, supra,* 119 Cal.App.4th 438, 453, fn. 6.)

With regard to Lona's contention that the court erred because its ruling was based on extraneous factors regarding the conduct of the case, it must be observed that at the hearing on the motion for summary judgment the court also conducted a status conference. At that time, 20 months after the original complaint was filed, Lona still had not obtained an answer from Franklin or taken its default. The record suggests that Lona's deposition was taken

shortly before his opposition was filed and that the parties had not accomplished much in the way of discovery.[5] In our view, it was appropriate for the court to be concerned about the equities of this case. Lona had received $1.5 million from the lenders and had not made any payments since June 2007. Meanwhile, he and his wife continued to live in the house for free, without paying rent or any impound funds, and the parties had not made much progress moving the case forward. The trial court cannot be faulted for being an active case manager and there is no showing by Lona that the court blurred its dual roles of managing the litigation and deciding the summary judgment motion on the merits.

IV. *Elements of a Cause of Action to Set Aside Trustee's Sale*

■ After a nonjudicial foreclosure sale has been completed, the traditional method by which the sale is challenged is a suit in equity to set aside the trustee's sale. (*Anderson v. Heart Federal Sav. & Loan Assn.* (1989) 208 Cal.App.3d 202, 209–210 [256 Cal.Rptr. 180].) Generally, a challenge to the validity of a trustee's sale is an attempt to have the sale set aside and to have the title restored. (*Onofrio v. Rice* (1997) 55 Cal.App.4th 413, 424 [64 Cal.Rptr.2d 74] (*Onofrio*), citing 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trusts & Mortgages, § 9.154, pp. 507–508.)

On summary judgment, a "defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) Neither the parties' briefs nor the papers they filed below on the motion for summary judgment discuss the elements of an equitable cause of action to set aside a foreclosure sale. The parties do not cite any cases that expressly set forth the elements.

■ " 'It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties.' " (*Lo v. Jensen* (2001) 88 Cal.App.4th 1093, 1097–1098 [106 Cal.Rptr.2d 443] (*Lo*), quoting *Bank of America etc. Assn. v. Reidy* (1940) 15 Cal.2d 243, 248 [101 P.2d 77]; see also *Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 700 [86 Cal.Rptr.2d 657].)

---

[5] The evidence in support of the motion for summary judgment consisted of the loan documents and a declaration from an EMC employee. Lona's evidence in opposition to the motion consisted of seven pages from his deposition.

█ Case law instructs that the elements of an equitable cause of action to set aside a foreclosure sale are: (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering. (*Bank of America etc. Assn. v. Reidy, supra,* 15 Cal.2d at p. 248; *Saterstrom v. Glick Bros. Sash etc. Co.* (1931) 118 Cal.App. 379, 383 [5 P.2d 21] (*Saterstrom*) [trustee's sale set aside where deed of trust was void because it failed to adequately describe property]; *Stockton v. Newman* (1957) 148 Cal.App.2d 558, 564 [307 P.2d 56] (*Stockton*) [trustor sought rescission of the contract to purchase the property and the promissory note on grounds of fraud]; *Sierra-Bay Fed. Land Bank Assn. v. Superior Court* (1991) 227 Cal.App.3d 318, 337 [277 Cal.Rptr. 753] (*Sierra-Bay*) [to set aside sale, "debtor must allege such unfairness or irregularity that, when coupled with the inadequacy of price obtained at the sale, it is appropriate to invalidate the sale"; "debtor must offer to do equity by making a tender or otherwise offering to pay his debt"]; *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109 [51 Cal.Rptr.2d 286] (*Abdallah*) [tender element]; *Munger v. Moore* (1970) 11 Cal.App.3d 1, 7 [89 Cal.Rptr. 323] [damages action for wrongful foreclosure]; see also 1 Bernhardt, Mortgages, Deeds of Trust, and Foreclosure Litigation (Cont.Ed.Bar 4th ed. 2011 supp.) § 7.67, pp. 580–581, and cases cited therein summarizing grounds for setting aside trustee sale.)

█ Justifications for setting aside a trustee's sale from the reported cases, which satisfy the first element, include the trustee's or the beneficiary's failure to comply with the statutory procedural requirements for the notice or conduct of the sale. (*Knapp, supra,* 123 Cal.App.4th at pp. 96–99 [alleged irregularity in default notice and sale notice]; *Sierra-Bay, supra,* 227 Cal.App.3d at p. 337 [to set aside sale, "debtor must allege such unfairness or irregularity that, when coupled with the inadequacy of price obtained at the sale, it is appropriate to invalidate the sale"]; *6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.* (2001) 85 Cal.App.4th 1279, 1284 [102 Cal.Rptr.2d 711] ["mere inadequacy of price, absent some procedural irregularity that contributed to the inadequacy of price or otherwise injured the trustor, is insufficient to set aside a nonjudicial foreclosure sale"].) Other grounds include proof that (1) the trustee did not have the power to foreclose (*Bank of America v. La Jolla Group II* (2005) 129 Cal.App.4th 706 [28 Cal.Rptr.3d 825] [trustee's sale invalid because borrower and lender had entered into agreement to cure default; loan was therefore current and lender did not have right to foreclose]; *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 878 [97 Cal.Rptr.2d 255] (*Dimock*) [where original trustee completed trustee's sale after being

replaced by new trustee, sale was void because original trustee no longer had power to convey property]); (2) the trustor was not in default, no breach had occurred, or the lender had waived the breach (*System Inv. Corp. v. Union Bank* (1971) 21 Cal.App.3d 137, 154 [98 Cal.Rptr. 735] (*System*) [borrower was not in default because it was excused from performance by lender's prior breach of contract; bank waived amount allegedly due]; *Van Noy v. Goldberg* (1929) 98 Cal.App. 604 [277 P. 538] [debt had not matured]); or (3) the deed of trust was void (*Saterstrom, supra,* 118 Cal.App. at p. 383 [trustee's sale set aside where deed of trust was void because it failed to adequately describe property]; *Stockton, supra,* 148 Cal.App.2d at p. 564 [trustor sought rescission of promissory note on grounds of fraud]; see also 1 Bernhardt, Mortgages, Deeds of Trust, and Foreclosure Litigation, *supra,* § 7.67, pp. 580–581). We shall discuss this element further in part V.B. of this opinion.

## V. Analysis of Summary Judgment Motion

Citibank and EMC sought summary judgment on three separate grounds, arguing that there was no triable issue of material fact with regard to Lona's cause of action to set aside the trustee's sale because (1) Lona failed to demonstrate any irregularity in connection with the trustee's sale; (2) Lona voluntarily entered into the loans; and (3) Lona failed to make a valid tender offer. We shall address each of these grounds separately.

### A. Alleged Inability to Show Irregularity in Trustee's Sale

As a ground for their summary judgment motion, Citibank and EMC argued that Lona could not overcome the presumption of validity by proving an irregularity in the trustee's sale and resulting prejudice.

"A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.' [Citations.] This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity. [Citation.] The 'mere inadequacy of price, absent some procedural irregularity that contributed to the inadequacy of price or otherwise injured the trustor, is insufficient to set aside a nonjudicial foreclosure sale. [Citations.]' [Citations.] It is the burden of the party challenging the trustee's sale to prove such irregularity and thereby overcome the presumption of the sale's regularity." (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1258 [26 Cal.Rptr.3d 413] (*Melendrez*) In addition, under section 2924,[6] there is a conclusive statutory presumption created in favor of

---

[6] Section 2924 provides in part that "recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the

a bona fide purchaser who receives a trustee's deed that contains a recital that the trustee has fulfilled its statutory notice requirements. (*Melendrez, supra,* 127 Cal.App.4th at p. 1250.)

In their motion for summary judgment, Citibank and EMC argued that "to set aside a foreclosure, there has to be an irregularity in the foreclosure process itself," citing *Nguyen, supra,* 105 Cal.App.4th at page 445. They asserted that Lona had not alleged any facts establishing a procedural irregularity in the trustee's sale and that he had conceded in opposition to their demurrer that the lawsuit was based on the alleged illegality of the loans and the deeds of trust, and not any irregularity in the sale procedure. Citing *Nguyen,* Citibank and EMC argued that challenges to the underlying loans and deeds of trust are not proper grounds for setting aside a trustee's sale and that the only ground for setting aside a trustee sale is irregularity in the notice and sale procedures.

This court's holding in *Nguyen,* however, is not so narrow. In that case, we addressed two grounds for setting aside the trustee's sale: (1) alleged irregularity in the procedure coupled with inadequate price and (2) the lender's alleged breach of an oral agreement to postpone the trustee's sale. (*Nguyen, supra,* 105 Cal.App.4th at pp. 444–445.) Other grounds for setting aside a trustee's sale in the case law include assertions that no breach occurred, that the borrower was not in default, that the deed of trust was void, that the sale was the result of sham bidding or an attempt to restrict competition in bidding, or that the trustee did not have the power to foreclose. (*Hauger v. Gates* (1954) 42 Cal.2d 752, 755 [269 P.2d 609] (*Hauger*) [borrower's setoff claim equaled the amounted owed]; *Bank of America v. La Jolla Group II, supra,* 129 Cal.App.4th 706 [trustee's sale invalid because borrower and lender had entered into agreement to cure default; loan was therefore current and lender did not have right to foreclose]; *System, supra,* 21 Cal.App.3d at p. 154 [borrower was not in default because it was excused from performance by lender's prior breach of contract; bank waived amount allegedly due]; *Saterstrom, supra,* 118 Cal.App. at p. 383 [trustee's sale set aside where deed of trust was void because it failed to adequately describe property]; *Dimock, supra,* 81 Cal.App.4th 868 [purported sale conducted by former trustee who had substituted out and did not have the power to sell the property was void, not merely voidable]; *Stockton, supra,* 148 Cal.App.2d at p. 564 [trustor sought rescission on grounds of fraud]; *Bank of America etc. Assn. v. Reidy, supra,* 15 Cal.2d at p. 248 [sham bidding]; and *Lo, supra,* 88 Cal.App.4th at p. 1097 [sham bidding]; see 1 Bernhardt,

---

notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice." (*Id.,* subd. (c).)

Mortgages, Deeds of Trust, and Foreclosure Litigation, *supra*, § 7.67, pp. 580–581.) In summary, in addition to procedural irregularity in the notice and sale procedures, the trustor may have other grounds for seeking to set aside a trustee's sale.

Although Lona's complaint alleged some unspecified irregularity in the foreclosure procedure, there was no evidence of any irregularity in the notice and sale procedures and the moving parties' facts relating to the notice and sale procedures were undisputed.[7]

As we have stated, irregularity in the notice and sale procedures is not the only ground for setting aside a trustee's sale. Thus, to prevail on summary judgment, Citibank and EMC had to show both that there was no irregularity in the notice and sale procedures and that none of the other grounds for setting aside the sale that were alleged in the second amended complaint applied. Lona's primary contention was that the trustee's sale was void because the underlying loans and deeds of trust were unconscionable, illegal, and void at the inception. Citibank and EMC addressed these assertions as the third ground for their motion, which we discuss in the next part of this opinion.

### B. *Assertion That Loans Were Not Unconscionable*

As a third ground for their motion, Citibank and EMC challenged the allegations of Lona's second amended complaint that the trustee's sale was " 'improperly held . . . due to the unconscionable and illegal nature of the loan agreement and deed of trust.' " The moving parties did not specify which element of the cause of action this part of their motion addressed. Arguably, it implicated both the first and third elements of the cause of action. Lona contends that the trustee's sale should be set aside on the grounds that the loan was void *ab initio* because it was unconscionable and that he was excused from the tender requirement because the loan was unconscionable.[8]

---

[7] In our view, Citibank and EMC are not entitled to rely on the statutory presumption of validity since their motion did not contain a copy of the trustee's deed. Although they attempted to attach a copy of the trustee's deed, the document they placed into evidence related to another property, not Lona's property. This point is moot because Lona did not dispute any of the moving parties' facts relating to the notice or sale procedures.

[8] It is important at this juncture to note that Lona did not allege any separate tort claims for fraud or contract claims based on the alleged unconscionability of the loans against Citibank or EMC. The only remaining cause of action against those defendants was Lona's equitable claim to set aside the trustee's sale.

First, Citibank and EMC argued that a trustee's sale could not be set aside for unconscionability because the only basis for setting aside a trustee's sale is irregularity in the foreclosure procedure. We have already rejected that contention.

Second, Citibank and EMC argued that Lona failed to establish that the loans were unconscionable. In essence, they asked the court to find, as a matter of law, that the loans and deeds of trust were not unconscionable.

▉ Before proceeding further, we review general principles governing the "judicially created doctrine of unconscionability." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*), abrogated in part on another ground in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___, ___ [179 L.Ed.2d 742, 131 S.Ct. 1740, 1746].) "Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion. [Citation.] 'The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " (*Armendariz*, at p. 113.) The record here suggests that the deeds of trust and the notes were contracts of adhesion. They appear to be standard forms that were drafted by the lender or others and presented to Lona for signature. There was no evidence in the record that Lona had any role in negotiating the terms of the contracts.

▉ "If the contract is adhesive, the court must then determine whether 'other factors are present which, under established legal rules—legislative or judicial—operate to render it [unenforceable].' [Citation.] 'Generally speaking, there are two judicially imposed limitations on the enforcement of adhesion contracts or provisions thereof. The first is that such a contract or provision which does not fall within the reasonable expectations of the weaker or "adhering" party will not be enforced against him. [Citations.] The second—a principle of equity applicable to all contracts generally—is that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or "unconscionable." ' [Citation.] Subsequent cases have referred to both the 'reasonable expectations' and the 'oppressive' limitations as being aspects of unconscionability." (*Armendariz, supra,* 24 Cal.4th at p. 113.)

▉ "In 1979, the Legislature enacted Civil Code section 1670.5, which codified the principle that a court can refuse to enforce an unconscionable provision in a contract. [Citation.] As section 1670.5, subdivision (a) states: 'If the court as a matter of law finds the contract or any clause of the contract

to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.' " (*Armendariz, supra*, 24 Cal.4th at p. 114.) Subdivision (b) of section 1670.5 provides: "When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."

 " '[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results. [Citation.] 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra*, 24 Cal.4th at p. 114.)

Absent unusual circumstances, evidence that one party has overwhelming bargaining power, drafts the contract, and presents it on a take-it-or-leave-it basis is sufficient to demonstrate procedural unconscionability and require the court to reach the question of substantive unconscionability, even if the other party has market alternatives. (*Gatton v. T-Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 586 [61 Cal.Rptr.3d 344].)

In their motion, Citibank and EMC asserted that Lona voluntarily entered into the loans and received the benefits of the loans and that it was undisputed that he signed the loan documents, which set forth the terms of the loans. Defendants focused on Lona's allegations that the loans were unconscionable because of the potential increase in the interest rate on the first loan from 8.25 to 13.25 percent and the balloon payment on the second loan. Citibank and EMC argued that these terms "had no impact whatsoever on [Lona's] inability to make the monthly Loan payments," because the interest rate on the first loan was fixed at 8.25 percent for the first five years and the balloon payment was not due for 15 years and Lona defaulted within the first year after entering into the loans. We are not persuaded that the increase in the interest rate on the first loan or the amount of the balloon

payment on the second loan is sufficient in and of itself to support the claim that the loans were unconscionable. However, Citibank and EMC's assertion that these allegedly unconscionable terms of the loan did not cause the default does not necessarily dispose of Lona's claim that the loans were void *ab initio* because they were unconscionable.

In addition to alleging unconscionability based on the interest rates and balloon payment provision, the second amended complaint alleged that the loans were unconscionable and illegal because they "were made to [Lona] without reasonable consideration of his ability to repay the loans . . . given his income at the time" and that the interest rate "far exceeded what was reasonable given his credit rating at the time of application." Citibank and EMC's motion did not address these allegations. The moving parties presented no evidence regarding Lona's income, credit rating, or credit worthiness. And when Lona raised these factual issues in response to the motion for summary judgment, the moving parties did not respond; they did not discuss Lona's evidence or provide any legal argument regarding the impact of that evidence. They did not file anything in reply. In our view, defendants failed to meet their burden on summary judgment because their motion failed to address all of the allegations of Lona's second amended complaint regarding the alleged illegality of the loan.

■ On summary judgment, an alternative method by which a defendant may meet its burden of showing that an essential element of the plaintiff's claim cannot be established is to present evidence that the plaintiff "does not possess, and cannot reasonably obtain, needed evidence." (*Aguilar, supra*, 25 Cal.4th at p. 854.) But unlike federal law, summary judgment law in California requires the defendant to *present evidence*, and not simply *point out through argument*, that the plaintiff does not possess and cannot reasonably obtain the needed evidence. (*Aguilar*, at p. 854.) Such evidence may consist of the deposition testimony of the plaintiff's witnesses, the plaintiff's factually devoid discovery responses, or admissions by the plaintiff in deposition or in response to requests for admission that he or she has not discovered anything that supports an essential element of the cause of action. (See *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 749 [41 Cal.Rptr.2d 719]; *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 482 [50 Cal.Rptr.2d 785]; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 590 [37 Cal.Rptr.2d 653].)

At the hearing on the summary judgment motion, Citibank and EMC argued that there was no evidence to support Lona's allegations, that Lona had not alleged any facts that would create triable issues, and that Lona relied on conclusions and not facts, which was not enough to avoid summary judgment. Citibank and EMC's evidence in support of their motion for

summary judgment consisted of the loan documents and documents related to the trustee's sale, as well as the declaration of an employee of EMC describing and authenticating the documents. They did not submit any discovery responses by Lona. To the extent that their summary judgment motion relied on the claim that Lona had no evidence to support the allegations of his complaint, Citibank and EMC relied solely on argument and did not present the type of evidence necessary to demonstrate that Lona did not possess and could not reasonably obtain, needed evidence. (*Aguilar, supra*, 25 Cal.4th at p. 854.) Thus, Citibank and EMC failed to meet their burden on summary judgment to show that Lona had no evidence that supported his claims.

In addition, with regard to this ground, the record reveals triable issues of material fact. In opposition to the motion for summary judgment, Lona presented evidence that he had only an eighth grade education, his English was limited, no one explained the documents to him, and he did not understand what he was signing. He presented evidence that, while the loan brokers told him what the initial interest rate and monthly payments were, they did not tell him how high the interest rate could increase on the first loan and that no one explained the balloon payment to him. The loan documents appear to be on standard, preprinted forms in English and there is no evidence Lona had any role in negotiating the terms of the loans. In our view, this was sufficient evidence of unequal bargaining power, oppression or surprise to raise a triable issue regarding *procedural* unconscionability.

In addition, there was uncontradicted evidence that Lona earned only $40,000 per year at the time the loans were approved, that only his income was considered in qualifying for the loans, and that the monthly payments were approximately four times his monthly income.[9] Given the extreme disparity between the amount of the monthly loan payments and Lona's income, this was sufficient to create a triable issue on the question of whether the loans were overly harsh and one sided and thus *substantively* unconscionable. And while this evidence may not ultimately be persuasive at trial, in this case, it was sufficient to defeat the motion for summary judgment.

---

[9] At the hearing on the motion, the attorneys seemed to agree that the loan application indicated that Lona made $20,000 per month. However, neither party placed the loan application into evidence and the only evidence in the record relating to Lona's income was his deposition testimony. Lona's counsel told the court that there was a factual dispute whether Lona knew what the loan application stated and whether Lona was responsible for the alleged misrepresentation regarding his income in the loan application. Unfortunately, Lona neglected to provide the court with evidence that supported these assertions. Since there is no evidence in the record regarding the entries in the loan application, we do not consider them in evaluating the propriety of granting summary judgment. Even were the application in the record, it appears there would be a factual dispute regarding the amount of Lona's monthly income— whether it was $240,000 per year ($20,000 per month) as purportedly stated in the loan application or $40,000 per year as Lona testified in deposition.

Since Citibank and EMC failed to address all of the allegations of the complaint regarding the alleged unconscionability of the loans and failed in their burden to show that Lona did not have any evidence to support his claims, we cannot say that they have met their burden of demonstrating that the loans and deeds of trust were not unconscionable as a matter of law. In addition, Lona submitted sufficient evidence to raise a triable issue with regard to the alleged unconscionable nature of the transaction.

Our holding does not mean that a borrower may defeat a motion for summary judgment in an action to set aside a trustee's sale merely by alleging that he or she did not understand the terms of the loan documents signed or could not afford the loan. In this case, the primary reasons for reversing the summary judgment are the moving parties' failure to address all of the allegations of the second amended complaint and their failure to properly demonstrate that Lona had no evidence to support his claims. In addition, after Lona's opposition argued that the loans were void for illegality at the time of signing and submitted evidence that demonstrated an extreme disparity between Lona's income and the amount of his monthly payments, Citibank and EMC made no effort to address this evidence with argument or legal authority.

### C. *Tender Requirement*

■ Because the action is in equity, a defaulted borrower who seeks to set aside a trustee's sale is required to do equity before the court will exercise its equitable powers. (*MCA, Inc. v. Universal Diversified Enterprises Corp.* (1972) 27 Cal.App.3d 170, 177 [103 Cal.Rptr. 522].) Consequently, as a condition precedent to an action by the borrower to set aside the trustee's sale on the ground that the sale is voidable because of irregularities in the sale notice or procedure, the borrower must offer to pay the full amount of the debt for which the property was security. (*Abdallah, supra,* 43 Cal.App.4th at p. 1109; *Onofrio, supra,* at p. 424 [the borrower must pay, or offer to pay, the secured debt, or at least all of the delinquencies and costs due for redemption, before commencing the action].) "The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower]." (*FPCI RE-HAB 01 v. E & G Investments, Ltd.* (1989) 207 Cal.App.3d 1018, 1022 [255 Cal.Rptr. 157].)

### D. *Exceptions to the Tender Requirement*

■ There are, however, exceptions to the tender requirement. Our review of the case law discloses four exceptions.

First, if the borrower's action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt.

(*Stockton, supra*, 148 Cal.App.2d at p. 564) [trustor sought rescission of the contract to purchase the property and the promissory note on grounds of fraud]; *Onofrio, supra*, 55 Cal.App.4th at p. 424.)

Second, a tender will not be required when the person who seeks to set aside the trustee's sale has a counterclaim or setoff against the beneficiary. In such cases, it is deemed that the tender and the counterclaim offset one another, and if the offset is equal to or greater than the amount due, a tender is not required. (*Hauger, supra*, 42 Cal.2d at p. 755.)

Third, a tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale. (*Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285, 291 [119 P. 82] (*Humboldt*).) In *Humboldt*, the defendant's deceased husband borrowed $55,300 from the plaintiff bank secured by two pieces of property. The defendant had a $5,000 homestead on one of the properties. (*Id.* at p. 287.) When the defendant's husband defaulted on the debt, the bank foreclosed on both properties. In response to the bank's argument that the defendant had to tender the entire debt as a condition precedent to having the sale set aside, the court held that it would be inequitable to require the defendant to "pay, or offer to pay, a debt of $57,000, for which she is in no way liable" to attack the sale of her $5,000 homestead.[10] (161 Cal. at p. 291.)

Fourth, no tender will be required when the trustor is not required to rely on equity to attack the deed because the trustee's deed is void on its face. (*Dimock, supra*, 81 Cal.App.4th at p. 878 [beneficiary substituted trustees; trustee's sale void where original trustee completed trustee's sale after being replaced by new trustee because original trustee no longer had power to convey property].)

In their motion for summary judgment, Citibank and EMC asserted that *Holland v. Pendleton Mtge. Co.* (1943) 61 Cal.App.2d 570, 577–578 [143 P.2d 493] (*Holland*) establishes another exception to the tender requirement. Although one treatise interprets the case that way (see 4 Miller & Starr, Cal. Real Estate (3d ed. 2003) Deeds of Trust, § 10:212, p. 686), we do not agree that *Holland* establishes an exception to the tender rule, since the tender requirement was not at issue in *Holland* and the court did not discuss the tender requirement. We discuss *Holland* nonetheless because Citibank and EMC relied on it in their motion.

---

[10] The *Humboldt* court stated that the "defendant would be subjected to very evident injustice and hardship if her right to attack the sale were made dependent upon an offer by her to pay the whole debt. The debt was not hers, and she was not liable for any part of it. Her only interest was in the homestead property, which [was worth] $5,000, while the property in which she had no interest was worth over $57,000. The debt amounted to $57,618.30." (*Humboldt, supra*, 161 Cal. at p. 291.)

In *Holland*, the trustee's sale was continued four times and the property was sold to the beneficiary/lender. (*Holland, supra*, 61 Cal.App.2d at p. 573.) The court held the sale was void because the trustee had not complied with the statutory requirements for noticing the fifth and actual sale date. (*Id.* at pp. 575–577.) After the sale, the trustor remained in possession of the property and paid the lender $35 per month. (*Id.* at p. .577.) The parties disputed whether the payments were rent or were made pursuant to a new agreement with the lender to redeem the property. (*Ibid.*) In light of the irregularities in the notice of the sale, the appellate court held that the trustor should be allowed to set aside the sale. It also directed the trial court to determine whether the parties had entered into a new agreement and the nature of the monthly payments, and ordered that any amounts due be paid "after judgment." (*Id.* at pp. 577–578.) Although the court did not discuss the tender requirement, the treatise authors have interpreted *Holland* as holding that a court "may permit the trustor to set aside the foreclosure sale on condition that payment be made after entry of judgment." (4 Miller & Starr, Cal. Real Estate, *supra*, Deeds of Trust, § 10:212, p. 686.) In our view, the appellate court in *Holland* was providing guidance to the trial court on remand regarding the monthly payments and did not establish a fifth exception to the tender requirement.

### E. *Analysis of Tender Requirement Element*

We begin our analysis by reviewing the allegations of Lona's second amended complaint (hereafter "complaint"). Lona alleged that the trustee's "sale was improperly conducted due to fraudulent conduct of the foreclosing party and the unconscionable and illegal nature of the loan agreement and deed of trust . . . . The loan agreements were void for illegality from the inception and . . . voidable based on the unconscionable nature of the loans [and] violation of stated Public Policy." The complaint also alleged that Lona was "excused from tendering the cure amount prior to seeking equitable relief, due to the fraudulent conduct of the foreclosing party, its failure and refusal to comply with statutory pre-requisites to the right to foreclose and the illegal and unconscionable nature of the contract." Thus, the complaint alleged both irregularity in the foreclosure process and illegality of the underlying contracts.

In their summary judgment motion, Citibank and EMC attacked the tender requirement element of Lona's cause of action and argued that his cause of action to set aside the trustee's sale failed because he did not tender the amounts due on the first loan before filing suit and that none of the exceptions to the tender requirement applied. Citibank and EMC's arguments regarding the exceptions to the tender requirement cited and distinguished

*Holland* and *Humboldt* but failed to discuss the exception relating to the legality of the loans and the validity of the debt, which Lona relied on in his complaint.

In opposition to the motion, Lona argued that there were other exceptions to the tender rule, including those set forth in *Stockton* and *Hauger*. He argued that he was not required to tender to seek equitable remedies or damages because (1) the deed of trust "was illegal from the time of formation and therefore, unenforceable and non-assignable" and (2) his "claims would offset any amounts claimed to be due under the void agreements." Thus, Lona's opposition relied on two exceptions to the tender requirement that Citibank and EMC had not addressed. Lona also argued that a tender was not required because his claim was based on the illegality of the loan contract and not any irregularity in noticing or conducting the trustee's sale.

As noted, the issues on summary judgment are framed by the pleadings. (*Varni, supra*, 35 Cal.App.4th at pp. 886–887.) To prevail on their summary judgment motion, Citibank and EMC had to show that Lona could not establish the tender requirement element of·his cause of action by showing both that Lona had not tendered and that the exceptions to the tender requirement that Lona relied on in his complaint did not apply. It was undisputed that Lona did not tender the amounts due before filing suit. Citibank and EMC failed to meet their initial burden on summary judgment because their motion was based on the exception in *Humboldt* and the holding in *Holland*, which Lona's complaint did not rely on, and did not address the exception from *Stockton* (tender not required when borrower's action attacks validity of debt), which was the exception that Lona had pleaded in his complaint.[11] We hold that Citibank and EMC did not meet their burden of showing that Lona could not state a cause of action to set aside the trustee's sale on the ground that he could not establish the tender requirement because their motion did not address the exceptions to that element that Lona relied on in his complaint. A defendant that moves for summary judgment has the burden to show that it is entitled to judgment with respect to all theories of liability asserted by the plaintiff. (*Lopez v. Superior Court* (1996) 45 Cal.App.4th 705, 717 [52 Cal.Rptr.2d 821].)

F. *Conclusion*

We conclude that Citibank and EMC have not met their initial burden on summary judgment with regard to the first and third grounds for their motion

---

[11] Although Lona's complaint did not expressly plead the exception in *Hauger* (tender not required where trustor's counterclaim is greater than the amount due on the loan), he did pray for both compensatory and punitive damages. Arguably, that exception is also encompassed by the pleadings.

and that the second ground is not dispositive. We therefore hold that the court erred when it granted their motion.

## DISPOSITION

The summary judgment is reversed.

Rushing, P. J., and Duffy, J.,[*] concurred.

---

[*]Retired Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.