Filed 4/29/15  Deermont v. Ortiz CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DEERMONT, LLC,<br><br>    Plaintiff, Cross-Defendant and Respondent,<br><br>    v.<br><br>GABRIEL ORTIZ,<br><br>    Defendant, Cross-Complainant and Appellant,<br><br>U.S. CREDIT BANCORP, INC. and MICHEAL RONE,<br><br>    Cross-Defendants and Respondents. | B247626<br><br>(Los Angeles County<br>Super. Ct. No. SC113395) |

APPEAL from judgment of the Superior Court of Los Angeles County, Cesar C. Sarmiento, Judge.  Affirmed.

Law Offices of Derek L. Tabone and Derek L. Tabone for Defendant, Cross-Complainant and Appellant.

Law Office of Stan Stern and Stan Stern for Plaintiff, Cross-Defendant, and Respondent.

Cheng Law Firm and Hanwei Cheng for Cross-Defendants and Respondents.

# INTRODUCTION

Appellant Gabriel Ortiz appeals the trial court's judgment finding that Ortiz's cross-complaint, which sought to cancel the deed of trust resulting from a foreclosure, was barred by collateral estoppel. Ortiz asserts that the court abused its discretion in allowing Deermont, LLC (Deermont), and U.S. Credit Bancorp, Inc. and its representative Michael Rone (collectively referred to as Bancorp) to amend their answers to include the defense of collateral estoppel on the eve of the bench trial. Ortiz also argues that collateral estoppel is inapplicable because the elements for collateral estoppel have not been satisfied and because the prior judgment resulted from an arbitration award. We affirm because Ortiz never asserted prejudice in opposing the amendments, was in privity with a party to the prior proceeding, and the issues necessarily decided in the prior adjudication are identical to the issues raised by the cross-complaint. Because this is an assertion of mutual collateral estoppel, the fact the prior judgment resulted from arbitration is inconsequential.

# FACTS AND PROCEDURAL BACKGROUND

Prior to the foreclosure, Anatolio and Guadalupe Garcia owned the property located at 416 Lincoln Boulevard in Venice, California for almost 40 years. In 2003, the Garcias sought loans for funds to develop the property. In May 2003, Bancorp loaned the Garcias $205,000, secured by a Deed of Trust on the property. In January 2005, Bancorp provided the Garcias with another loan, this time in the amount of $170,000, also secured by a Deed of Trust on the property. At the Garcias' request, Bancorp extended the maturity dates for both loans until December 2010, with the understanding that the Garcias would pay off both loans by that date. Both notes and deeds of trust provided that if the Garcias transferred all or part of the property to another without Bancorp's written consent, Bancorp had the option to accelerate the loans and require immediate payment in full of all sums secured by the deeds of trusts.

In February 2010, the Garcias stopped making payments on the loans. In June 2010, Bancorp noticed default and its election to sell under the deed of trust as to the $170,000 loan. In October 2010, Bancorp noticed the trustee's sale as to the $170,000 loan, stating the estimated pay off amount. Bancorp noticed default and election to sell under the deed of trust as to the $205,000 loan also in October 2010.

In the interim, the Garcias transferred their full interest in the property to Gabriel Ortiz as a gift via a grant deed in September 2010 without obtaining Bancorp's consent. Around that time, the Garcias also executed a partnership agreement with Ortiz. The objectives of the partnership were for the parties to develop and perform construction on the property, and for Ortiz to obtain financing for the property to satisfy the defaults on the loans from Bancorp.

The trustee's sale was noticed for December 15, 2010. Two days before the scheduled sale, Ortiz transferred a 25 percent interest in the property back to Guadalupe Garcia, who immediately filed for Chapter 13 bankruptcy to stay the sale. Almost a month later, Guadalupe Garcia's bankruptcy action was dismissed. Guadalupe Garcia filed for bankruptcy two more times in January and March 2011; these two bankruptcy actions were also dismissed.

In March 2011, the Garcias sued Bancorp to enjoin the foreclosure sale. Based on an arbitration agreement signed by the Garcias in relation to the deeds of trust, the parties arbitrated the Garcias' claims. In November 2011, the arbitrator found in favor of Bancorp. The arbitrator concluded that the Garcias never tendered any money to Bancorp to cure the deficiencies. The arbitrator also held that the Garcias failed to establish that Bancorp breached the contracts, miscalculated or misstated the amounts due to cure the defaults or pay off the loans, or engaged in any unfair or deceptive business practices. The court entered judgment in favor of Bancorp based on the parties' stipulation to confirm the arbitration award.

In July 2011, Deermont purchased the property in the trustee's sale, paying an amount that satisfied the Garcias' unpaid debts to Bancorp. Shortly thereafter, Deermont brought the present action against the Garcias and Ortiz to quiet title. Ortiz filed cross-complaints against Deermont and Bancorp, seeking to cancel the trustee's sale.

One month before trial, Deermont requested to amend its answers to include the defenses of collateral estoppel and res judicata. Ortiz filed an opposition to the motion to amend, mainly asserting that the motion was not in the interest of justice. On the day trial was set to commence, the court heard Deermont's motion to amend, in which Bancorp joined. Ortiz's counsel did not appear at the hearing to oppose the motion. The court granted the motions to amend, noting that amendment would result in very minimal prejudice to Ortiz.

The following day, the bench trial commenced. The court first tried Deermont's and Bancorp's collateral estoppel defense to Ortiz's cross-complaint. The court found that collateral estoppel barred Ortiz's claims, based on the judgment entered against the Garcias. The court subsequently granted judgment for Deermont on its action for quiet title.

**DISCUSSION**

Ortiz's appeal solely addresses the cross-complaint and the affirmative defense of collateral estoppel. Ortiz argues that the court abused its discretion in granting Deermont and Bancorp leave to amend their answers. Ortiz also argues that the elements of collateral estoppel cannot be satisfied and application of collateral estoppel is barred by *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815. We address each argument in turn.

1. ***The Court Did Not Abuse Its Discretion in Granting Leave to Amend***

Ortiz argues that the court abused its discretion in granting Deermont's and Bancorp's motions for leave to amend their answers. "In the furtherance of justice, trial courts may allow amendments to pleadings and if necessary, postpone trial. (Code Civ. Proc. § 473.) Motions to amend are appropriately granted as late as the first day of trial [citation] or even during trial [citation] [if the opposing party] . . . will not be prejudiced. 'When a request to amend has been denied, an appellate court is confronted by two

4

conflicting policies. On the one hand, the trial court's discretion should not be disturbed unless it has been clearly abused; on the other, there is a strong policy in favor of liberal allowance of amendments. This conflict "is often resolved in favor of the privilege of amending, and reversals are common where the appellant makes a reasonable showing of prejudice from the ruling." ' [Citation.] " (*Honig v. Financial Corp. of America* (1992) 6 Cal.App.4th 960, 965.) Moreover, the policy of liberal allowance of amendments applies with particular force to answers (*Gould v. Stafford* (1894) 101 Cal. 32, 34; *Permalab-Metalab Equipment Corp. v. Maryland Cas. Co.* (1972) 25 Cal.App.3d 465, 472) "for a defendant denied leave to amend is permanently deprived of a defense" (*Hulsey v. Koehler* (1990) 218 Cal.App.3d 1150, 1159).

Here, one month before trial, Deermont moved to amend its answer to incorporate the defenses of collateral estoppel and res judicata. Ortiz filed an opposition to the motion to amend, asserting that the motion was not in the interest of justice and that Deermont and Bancorp lacked diligence in amending. Ortiz also argued that: "Denial of permission to amend pleadings may be based on long un-excused delay especially when the proposed amendment interjects a new issue that may require further investigation or discovery procedures." Yet, neither Ortiz's brief nor his attorney's declaration asserted that Ortiz would be prejudiced by the amendment. The brief and declaration never stated that this amendment necessitated further investigation or additional discovery. The above quoted language was the sole argument Ortiz proffered on the issue of prejudice. Additionally, Ortiz's counsel did not appear at the hearing to oppose Deermont's and Bancorp's motions. In its order granting the motions to amend, the court noted that "the only prejudice to Ortiz is the potential that the trial will need to be delayed." The court permitted the amendment due to this lack of prejudice and "[t]he strong policy in favor of permitting amendment and permitting a defendant to present all available defenses at trial."

Based on these facts we find no abuse of discretion. Although Ortiz now argues on appeal that he was prejudiced by the amendment because he did not have the opportunity to conduct discovery, and that he was "ambush[ed]" by the amendment, these arguments were never presented to the trial court. We decline to consider arguments not raised at trial. (See generally *Lambert v. Carneghi* (2008) 158 Cal.App.4th 1120, 1129.) In making its decision, the trial court appropriately considered the arguments before it and balanced the interests at stake. Its decision to allow amendment in favor of long standing public policy in favor of permitting amendments to answers was clearly not an abuse of discretion as there was no evidence of prejudice. We therefore affirm the court's decision to allow Deermont and Bancorp to amend their answers.

**2.      *The Court Properly Applied Collateral Estoppel***

Ortiz asserts that collateral estoppel is inapplicable to his claims against Deermont and Bancorp. Under the doctrine of "collateral estoppel" or "issue preclusion," "an *issue* necessarily decided in prior litigation may be conclusively determined as against the parties or their privies in a subsequent lawsuit on a different cause of action. [Citation.] . . . '[I]n its collateral estoppel aspect, the doctrine may also preclude a party to prior litigation from redisputing *issues* therein decided against him, even when those issues bear on different claims raised in a later case. Moreover, because the estoppel need not be mutual, it is not necessary that the earlier and later proceedings involve the identical parties or their privies. Only the party *against* whom the doctrine is invoked must be bound by the prior proceeding.' [Citation.]" (*Roos v. Red* (2005) 130 Cal.App.4th 870, 879.) "Collateral estoppel applies when (1) the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication, (2) there was a final judgment on the merits in the prior action and (3) the issue necessarily decided in the prior adjudication is identical to the one that is sought to be relitigated. [Citation.]" (*Ibid.*)

6

Here, Ortiz attacks the first and third elements of collateral estoppel, stating that he was not in privity with the Garcias and that the issues presented in this case are different than those previously adjudicated.  He also asserts that because the prior judgment resulted from an arbitration, he cannot be collaterally estopped by it.  We review the applicability of collateral estoppel de novo.  (*Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 618 ["The issue whether collateral estoppel applies is itself a question of law, which question we review de novo."].)

     a.     *Identity of the Parties:  Privity between Ortiz and Garcia*

As Ortiz was not a party to the arbitration, we first address whether he was in privity with the Garcias, such that he should be bound by the prior litigation.  "The concept of privity for the purposes of res judicata or collateral estoppel refers 'to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights [citations] and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is "sufficiently close" so as to justify application of the doctrine of collateral estoppel.  [Citations.]' " (*Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn* (1998) 60 Cal.App.4th 1053, 1069-1070 (*Citizens for Open Access*).)  "In the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication." (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875.)

"A party is adequately represented for purposes of the privity rule 'if his or her interests are so similar to a party's interest that the latter was the former's virtual representative in the earlier action.  [Citation.]' [Citation.]  We measure the adequacy of 'representation by inference, examining whether the ... party in the suit which is asserted to have a preclusive effect had the same interest as the party to be precluded, and whether that . . . party had a strong motive to assert that interest.  If the interests of the parties in question are likely to have been divergent, one does not infer adequate representation and

7

there is no privity. [Citations.] If the . . . party's motive for asserting a common interest is relatively weak, one does not infer adequate representation and there is no privity. [Citation.]' [Citation.]" (*Citizens for Open Access, supra,* 60 Cal.App.4th at p. 1071.)

Through the co-ownership of the property and the partnership agreement, Ortiz clearly shared a community of interest with the Garcias as to the property. Evidence indicates that Ortiz and the Garcias worked together to prevent the foreclosure sale, and the arbitration pursued by the Garcias was just a step in this collective effort to oppose the foreclosure. The Garcias transferred the property in full to Ortiz, only after the Garcias had been in default for six months and after Bancorp had already issued and recorded notice of default and its election to sell the property. At that same time, Ortiz had formed a partnership with the Garcias for the purpose of securing financing to pay off arrearages on the Bancorp loans and developing the property, as evidenced by the written partnership agreement signed by Ortiz and Ortiz's testimony regarding the nature of the partnership. Ortiz also testified that he knew that the property had been in default for six or seven months and that he had unsuccessfully attempted to obtain loans several times to pay off the default to Bancorp.

Furthermore, two days before the first noticed foreclosure sale, Ortiz conveyed 25 percent of the property back to Guadalupe Garcia, who declared bankruptcy that same day, in what appears to be an attempt to stay foreclosure proceedings. After multiple failed bankruptcy actions, the Garcias sued to enjoin the sale, and their claims against Bancorp were arbitrated. Ortiz admitted that he was made aware of the litigation and that he testified at the arbitration at the Garcias' request. These facts clearly establish that Ortiz and the Garcias had successive and mutual rights to the property at issue, and that their relationship was "sufficiently close" so as to justify application of the doctrine of collateral estoppel in the present action.

To the extent that Ortiz asserts that he was not in privity with the Garcias because he had no control over the prior action, did not direct or participate in it except as a witness, and did not attend the hearings nor select the counsel, the evidence indicates that Ortiz should have expected to be bound by the arbitration. As a co-owner of the property, Ortiz's interests were identical to the Garcias' interests in stopping the foreclosure. Based on their co-ownership of the property, their partnership, and their joint efforts to prevent foreclosure, we can reasonably and fairly conclude that Ortiz was represented by his partners, the Garcias, in the prior adjudication. Ortiz should realistically have expected to be bound by the arbitration brought by the Garcias, particularly since Ortiz took ownership of the property amidst the foreclosure proceedings and because Ortiz was well aware that the property was in default.

The facts strongly support a finding of privity, as does public policy. "Collateral estoppel is an equitable concept based on fundamental principles of fairness." (*Sandoval v. Superior Court* (1983) 140 Cal.App.3d 932, 941.) The objective of the doctrine of collateral estoppel is " ' " 'to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, [and] to protect against vexatious litigation.' " ' " (*Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 148.) Here, it would be unfair to require Bancorp and its purchaser to relitigate the same issues associated with the foreclosure simply because the Garcias gifted the property to another party after receiving notice of default and election to sell under the deed of trust. Not only would trying Ortiz's cross-complaint result in repetitive adjudications but could possibly result in inconsistent judgments.

We therefore conclude that for the purposes of applying collateral estoppel, Ortiz was in privity with the Garcias. The first element of collateral estoppel has been satisfied.

9

b.    *Identity of the Issues*

In his reply brief, Ortiz argues that the issues adjudicated in the first arbitration are not the same as those raised in his cross-complaint to cancel the trustee's sale. " 'The "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same.' " (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511-512, citing *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342.)

Here, the cross-complaint alleges that Bancorp (1) demanded more than was due on the loans, (2) failed to serve trustors with a notice of default on either loan, (3) failed to state the correct amounts due on the notices of default, (4) failed to serve trustors with notice of trustee's sale, and (4) failed to accurately indicate the amount due. Yet, these factual issues regarding notices of default and trustee's sale, and calculations of the amounts due on the loans were all necessarily decided in the first action where the Garcias arbitrated these issues.

Although the Garcias alleged breach of contract, misrepresentation, and unfair business practices in the first action, the factual issues in that action dealt with the validity of the foreclosure process engaged in by Bancorp and its trustee. There, the arbitrator found that the Garcias stopped making payments on the loans in February 2010, that Bancorp caused notices of default and election to sell under deed of trust to be recorded with regard to the $170,000 and $205,000 loans in June and October 2010 respectively, and that Bancorp caused a notice of trustee's sale to be recorded with regard to the $170,000 loan in September 2010. The arbitrator further determined that: "During the period between February 2010 and July 1, 2011, the parties themselves and through their respective attorneys engaged in extensive negotiations regarding the amounts required to cure the defaults under the loans, the amounts necessary to pay off the loans, especially the $170K loan, regarding extensions of the trustee's sale dates to allow [the Garcias] to obtain new financing, and requests by [Bancorp] for evidence of such financing. During that same period, [the Garcias] filed three separate bankruptcy proceeding[s] in order to stay the trustee's sale, all of which were dismissed, and obtained

10

agreements from [Bancorp] to continue the trustee's sale dates. [¶] . . . Notwithstanding that the [Garcias] disputed various calculations by [Bancorp] of the amounts necessary to cure [the Garcias'] defaults under the loans, particularly the $170K loan, *[the Garcias] never tendered any amounts to [Bancorp] to cure their default* and *[the Garcias] have failed by a preponderance of evidence to establish that [Bancorp] breached any contract or any implied or expressed covenant of the contracts, or that [Bancorp] either intentionally or negligently miscalculated or misstated the amounts necessary to cure [the Garcias'] defaults or pay off their loans at any particular time, or engaged in any unfair or deceptive business practices*." (Italics added.)

In finding in favor of Bancorp, the arbitrator determined that the foreclosure proceedings were properly conducted. This necessarily included a finding that the notices of default and of the trustee's sale were properly issued and recorded, and calculations of the amounts due were accurate, including the interest due. As summarized above, these are the very factual issues pleaded in the cross-complaint. Thus, the identical issue requirement for collateral estoppel is satisfied.

To the extent that Ortiz asserts that the arbitrator only contemplated the $170,000 loan, we disagree. The arbitrator's decision, quoted above, clearly discusses a plural number of loans on the property, and even specifically mentions the second loan, stating that Bancorp "caused a Notice Of Default And Election To Sell Under Deed Of Trust to be recorded with regard to the $205K loan." The arbitrator determined that the foreclosure process engaged in for both loans was proper.

Ortiz also asserts that the cross-complaint raises a new issue that "Rone had breached an express promise not to conduct a trustee's sale while the Garcias' action was pending." Yet, Ortiz fails to inform this court how that promise could effectively cancel the deed of trust, particularly where all aspects of the foreclosure were proper and there are no facts alleged showing that such a promise was in any way enforceable. Those factual contentions are inconsequential to Ortiz's claims, and thus do not provide a new, previously unadjudicated ground to cancel the trustee's sale.

11

We therefore conclude that there is identity of the issues raised in the cross-complaint and the prior action.

c.    *The Fact Prior Matter Decided by Arbitration Is Inconsequential*

Lastly, citing *Vandenberg, supra,* 21 Cal.4th 815, Ortiz argues that collateral estoppel cannot apply because the prior judgment is premised on an arbitration award. In *Vandenberg*, property owners (the Boyds) sued a former lessee (Vandenberg) for contamination of soils and groundwater underlying their property. (*Id*. at p. 825.) As part of a settlement agreement, the Boyds released all claims against Vandenberg except for their claim for breach of the lease agreement, which the parties agreed to resolve through arbitration or trial. (*Id*. at p. 826.)

Following the arbitrator's ruling in the Boyds' favor, Vandenberg subsequently sued several of his liability insurers for failure to defend. (*Vandenberg, supra,* 21 Cal.4th at p. 826 .) Although they were not parties to the arbitration, two of the liability insurers asserted that Vandenberg was collaterally estopped from relitigating one of the issues decided during the arbitration. (*Id.* at pp. 826–827.) Usually, a nonparty, like one of the insurers, may "take advantage, in a later unrelated matter, of findings made against his current adversary in the earlier proceeding" under what is known as "nonmutual collateral estoppel." (*Id.* at pp. 828–829.)

After considering various public policy arguments regarding the use of nonmutual collateral estoppel where the prior judgment results from a private arbitration, the Supreme Court concluded that fairness mandated that collateral estoppel could not be invoked by a nonparty to the prior arbitration. (*Vandenberg, supra,* 21 Cal.4th at p. 835) The Court discussed how although arbitrations offer parties benefits of an informal and expeditious forum for disputes, the use of arbitration rulings by nonparties can have unintended consequences because arbitration proceedings are subject to limited judicial review and arbitrators are not bound by technical interpretations of law. (*Id*. at P. 831-832.) The Court highlighted that California's statutory scheme for private arbitration nowhere specifies that a private arbitration award is binding in favor of nonparties in the absence of such an agreement. (*Id*. at p. 831.) The Court reasoned that a nonparty's use

12

of an arbitrator's rulings against an arbitral party "is not an inherent or expected feature of private arbitration that is implicitly accepted by the arbitral parties." (*Ibid*.) In sum, the court barred the assertion of nonmutual collateral estoppel where the prior judgment resulted from arbitration "unless the arbitral parties agreed, in the particular case, that such a consequence should apply." (*Id.* at p. 834.)

Here, there are three parties invoking collateral estoppel: Bancorp, Rone, and Deermont. Bancorp and Rone were clearly parties to the arbitration and thus, both have asserted mutual collateral estoppel. *Vandenberg* is therefore inapplicable to Bancorp's and Rone's assertion of collateral estoppel.

We also conclude that *Vandenberg* is inapplicable to Deermont's assertion of collateral estoppel because Deermont is in privity with Bancorp and bound by the arbitration. In *Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 811, the Supreme Court explained the meaning of mutual collateral estoppel, stating that "only parties to the former judgment or their privies may take advantage of or be bound by it. . . . A privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase. [Citations.] The estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him." The Court further stated that, "[h]e is bound by that litigation only if he has been a party thereto or in privity with a party thereto." (*Id.* at p. 812.)

Here, Deermont purchased the property from Bancorp's foreclosure proceedings, and thus acquired an interest in the subject matter of the arbitration through purchase. Had the Garcias succeeded at arbitration against Bancorp, the trustee who performed the sale and the purchaser, Deermont, would be bound by that decision and the purchase of the property would have been voidable. (See *Bank of America etc. Assn v. Reidy* (1940) 15 Cal.2d 243, 248 ["It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to

13

purchaser and parties."]; *People ex rel. State of Cal. v. Drinkhouse* (1970) 4 Cal.App.3d 931, 936-939 (The Court affirmed application of collateral estoppel applied against a grantee because the deed was void as to the grantor and the grantee could have no greater rights to the property than his grantor.)  As such, Deermont's use of collateral estoppel was mutual.  *Vandenberg*'s prohibition against nonmutual collateral estoppel premised on arbitration awards is thus inapplicable.

Based on the foregoing, we conclude that the court properly applied collateral estoppel to Ortiz's cross-complaint.  As leave to amend the answers and the application of collateral estoppel were the only issues raised on appeal, we affirm the judgment against Ortiz.

## DISPOSITION

The judgment is affirmed.  Deermont and U.S. Credit Bancorp, Inc. and Michael Rone are awarded their costs on appeal.


## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



KITCHING, Acting P. J.

I concur:



ALDRICH, J.



LAVIN, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


15