Filed 6/16/15  Figueroa Tower I v. U.S. Bank Nat. Assn. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| FIGUEROA TOWER I, LP et al, <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> U.S. BANK NATIONAL ASSOCIATION, etc., <br><br> Defendants and Respondents. | B255844 <br><br> (Los Angeles County <br> Super. Ct. No. BC506014) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Reversed in part, affirmed in part, and remanded.

Krane & Smith, Marc Smith, Daniel Reback; The Law Office of Katharine J. Galston and Katharine J. Galston, for Plaintiffs and Appellants.

Jeffer Mangels Butler & Mitchell, Robert B. Kaplan, Neil C. Erickson, for Defendants and Respondents.

## INTRODUCTION

Plaintiffs and appellants Figueroa Tower I, LP, Figueroa Tower II, LP, and Figueroa Tower III, LP (plaintiffs) brought an action against defendants and respondents U.S. Bank National Association (the Bank)[1] and Witkin & Eisinger (collectively defendants) asserting seven causes of action based on actions defendants took in enforcing the provisions of a promissory note (Note) and a deed of trust. The trial court sustained without leave to amend defendants' demurrer to five of plaintiffs' causes of action. It granted defendants' motion for summary judgment as to plaintiffs' two remaining causes of action as well as to two of the causes of action as to which it had already sustained defendants' demurrer. On appeal, plaintiffs challenge the trial court's demurrer ruling as to two of their causes of action and its summary judgment ruling. We reverse the trial court's ruling on defendants' demurrer and its ruling on defendants' summary judgment motion except as to one of plaintiffs' causes of action.

## BACKGROUND

In 2006, plaintiffs executed the Note in favor of German American Capital Corporation (GACC) in the principal sum of $62 million. The Note had a maturity date of August 1, 2016. To secure repayment of their debt to GACC under the Note, plaintiffs, as trustors, executed in favor of Chicago Title Company, as trustee, a "Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing" (Deed of Trust)[2] for the benefit of GACC with respect to the real property security—the Trust Property—commonly known as 654 and 660 South Figueroa Street, Los Angeles,

---

[1]     The Bank is fully identified as U.S. Bank National Association, As Trustee, as successor-in-interest to Bank of America, National Association, as successor by merger to Lasalle Bank National Association, as Trustee for the Registered Holders of 2006–CD3 Commercial Mortgage Pass-Through Certificates.

[2]     The parties and we refer to the Note, Deed of Trust, and other loan documents not relevant to this appeal as the "Loan Documents."

California (Property). Ultimately, through various assignments and a merger with another bank, the Bank became the holder of the Loan Documents.

On June 24, 2011, defendants' counsel sent plaintiffs a letter contending that plaintiffs had defaulted under the Loan Documents by their failure to make required payments. Defendants' counsel wrote, "As a result of the occurrence of the forgoing Event of Default, the Trustee hereby accelerates the Debt due and owing by the Borrower to the Trust payable pursuant to the Secured Loan Documents and declares such Debt to be immediately due and payable. Please further be advised that from and after June 24, 2011, interest shall accrue on the outstanding principal balance of the Loan due and owing to the Trust at the Default Rate. [¶] Demand is hereby made upon the Borrower by the Trustee to pay to the Trust the fully accelerated Debt due and owing pursuant to the Secured Loan Documents on or before July 1, 2011."

On July 24, 2011, plaintiffs filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code in the United State Bankruptcy Court for the Central District of California. On May 15, 2012, after obtaining an order modifying the automatic stay in the bankruptcy cases, the Bank caused to be recorded in the Los Angeles County Recorder's Office (Recorder's Office) a Notice of Default and Election to Sell Under Deed of Trust, and a Substitution of Trustee. On September 5, 2012, the Bank caused a Notice of Trustee's Sale Under Deed of Trust to be recorded in the Recorder's Office. The notice of trustee's sale stated that plaintiffs owed the Bank $81,931,461.72, including default interest, late charges, and a prepayment fee (or Yield Maintenance Amount) of $14,007,811.30. A trustee's sale was conducted on January 24, 2013, at which sale the Bank acquired ownership of the Property pursuant to a credit bid of $67 million. On January 28, 2013, the Bank caused a Trustee's Deed on Sale to be recorded in the Recorder's Office.

Thereafter, plaintiffs filed an action against defendants concerning actions defendants took in enforcing the provisions of the Note and the Deed of Trust, which actions included the foreclosure sale and the calculation of the prepayment fee. In their first amended complaint, plaintiffs asserted causes of action for breach of contract (first

3

cause of action), wrongful foreclosure (second cause of action), declaratory relief concerning quiet title and foreclosure (third cause of action), conversion (fourth cause of action), unjust enrichment (fifth cause of action), an accounting (sixth cause of action), and unfair competition (seventh cause of action).

Defendants demurred to the wrongful foreclosure, declaratory relief, conversion, unjust enrichment, and unfair competition causes of action. The trial court sustained without leave to amend the demurrer to the conversion, unjust enrichment, and unfair competition causes of action.[3] As to the wrongful foreclosure and declaratory relief causes of action, the trial court sustained the demurrer "without leave to amend unless [plaintiffs] deposit[] 5 million dollars into an escrow account by the close of business on December 10, 2013. If plaintiff[s] fail[] to do so causes of action 2 [wrongful foreclosure] and 3 [declaratory relief] will be dismissed."

On December 10, 2013, plaintiffs filed a "Notice Of $5.0 Million Dollar Deposit In Escrow By Plaintiffs Re: Tender In Accordance With The Court's December 3, 2013 Ruling On Defendants' Demurrer." In their notice, plaintiffs stated that they had "deposited the sum of $5.0 million dollars in the Client Trust Account of the law firm of Resch, Polster & Berger, LLP, with attorney Michael C. Baum, Esq[.], as the escrow holder, for tender to Defendant U.S. Bank National Association regarding the Second Cause of Action for Wrongful Foreclosure and Third Cause of Action for Declaratory Relief (Quiet Title) as set forth in Paragraph 87 of the [First Amended Complaint]."

Defendants filed a response and objection to plaintiffs' notice of plaintiffs' $5 million deposit in escrow. Defendants contended that plaintiffs had not complied with the trial court's order sustaining defendants' demurrer because Michael C. Baum, the purported escrow holder, represented the managing partner of Figueroa Tower II, LP's general partner, an interested party in the litigation, and thus could not be viewed as a disinterested stakeholder. They also contended that plaintiffs were noncompliant because

---

**3** Although unclear as to its meaning, the trial court's order said that the trial court sustained the demurrer as to these causes of action "without prejudice to the plaintiff[s] filing a properly noticed motion should new facts arise. . . ."

4

plaintiffs included, in a separate letter to defendants, tender terms that were not provided for in the trial court's order sustaining defendants' demurrer. In that letter, plaintiffs stated in part, "If the Bank elects to unconditionally accept Plaintiffs' tender, please make demand on Mr. Baum for payment with instructions as to where the tender payment should be made. In the event that the Bank does not provide instructions for disbursement by December 12, 2013, at 5:00 p.m. we will deem tender rejected. Please note that if the Bank elects to accept the tender and wants disbursement on the day requested by wire, then Plaintiffs' instructions before 11:00 a.m. Alternatively, Plaintiffs can issue a check on a same day basis." Defendants contended that the trial court's order did not require them to accept plaintiffs' tender, and that a compliant tender merely permitted a trial on the issue of whether the foreclosure had been wrongful.

On January 13, 2014, defendants moved for summary judgment or summary adjudication (summary judgment motion) as to plaintiffs' causes of action that were not the subject of defendants' demurrer—i.e., the breach of contract and accounting causes of action. Apparently because the trial court had not dismissed plaintiffs' wrongful foreclosure and declaratory relief causes of action by the time defendants filed their summary judgment motion, defendants also moved for summary judgment as to those causes of action. In their motion, defendants stated that they believed that the trial court had sustained without leave to amend their demurrer to plaintiffs' wrongful foreclosure and declaratory relief causes of action, but included those causes of action in their summary judgment motion "to the extent that these causes of action are still viable."

The trial court granted defendants' summary judgment motion. Among other things, the trial court ruled that plaintiffs had not demonstrated a material issue of fact with respect to the relevant loan documents or demonstrated that defendants had incorrectly calculated and imposed a $14 million prepayment fee—i.e., the trial court rejected plaintiffs' argument that the prepayment fee was to be calculated under the Loan Documents upon actual prepayment of the Note's indebtedness and not as of defendants' June 24, 2011, acceleration of that indebtedness.

5

Apparently with respect to plaintiffs' wrongful foreclosure and declaratory relief causes of action, the trial court ruled that "plaintiffs failed to comply with the Court's December 3, 2013 Order requiring the deposit of $5 million into an escrow account. The deposit into plaintiffs' attorney's trust account did not comply with the Order." In an accompanying footnote, the trial court stated, "Even if this were considered a deposit in escrow, summary judgment would still be proper for the reasons stated above." Thus, the trial court appears to have ruled that plaintiffs' wrongful foreclosure and declaratory relief causes of action had been defeated through defendants' demurrer—i.e., it had not changed its ruling sustaining without leave to amend defendants' demurrer, but that defendants' summary judgment motion also would have prevailed as to those causes of action if they were still viable.

## DISCUSSION

In *U.S. Bank National Assn. v. Yashouafar* (2014) 232 Cal.App.4th 639 (*U.S. Bank*), an action the Bank brought against the guarantors of the loan at issue in this case, we addressed the calculation of a prepayment fee under the Note and Deed of Trust. We held that "under the clear and explicit terms of the Note and Deed of Trust at issue in this case, no prepayment fee was due until [the guarantors] actually prepaid the Note's indebtedness." (*Id.* at p. 648.) Thus, we rejected the Bank's argument and trial court's ruling that the prepayment fee was calculated as of the Bank's June 24, 2011, acceleration of the indebtedness. (*Id.* at p. 647.) Because we issued the opinion in *U.S. Bank, supra,* 232 Cal.App.4th 649 after the parties fully briefed the appeal in this case, we granted the parties permission to file supplemental briefs addressing the impact of our holding in *U.S. Bank* on plaintiffs' appeal.

Based on our holding in *U.S. Bank*, plaintiffs argue that we should reverse the trial court's summary judgment in its entirety—which summary judgment, plaintiffs argue, included rulings on their breach of contract, wrongful foreclosure, declaratory relief, and accounting causes of action—because the "gravamen" of their causes of action was defendants' misinterpretation of the Loan Documents, including the calculation of the

6

prepayment fee. Defendants concede that our holding in *U.S. Bank* requires reversal of the trial court's summary judgment as to plaintiffs' breach of contract cause of action, but argue that there is no disputed material fact as to plaintiffs' accounting cause of action that requires reversal. They also argue that the trial court's summary judgment did not concern plaintiffs' wrongful foreclosure and declaratory relief causes of action because the trial court had previously sustained defendants' demurrer without leave to amend as to those causes of action and plaintiffs failed to comply with the trial court's tender order.[4]

## I.     The Demurrer

### A.     Standard of Review

"A demurrer tests the legal sufficiency . . . of the complaint. We independently review the sustaining of a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) We construe the pleading in a reasonable manner and read the allegations in context. (*Ibid.*) We must affirm the judgment if the sustaining of a general demurrer was proper on any of the grounds stated in the demurrer, regardless of the trial court's stated reasons. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9

---

[4] Inexplicably, defendants contend in their supplemental brief that their motion for summary judgment "did not address the Second Cause of Action for Wrongful Foreclosure and Third Cause of Action for Declaratory Relief re Quiet Title and Foreclosure alleged in the Borrowers' Complaint, in that the Trial Court had previously sustained Defendants' demurrer to those cause of action **without** leave to amend." Under the heading "The Trust Is Entitled To Summary Judgment/Summary Adjudication Of Borrowers' Second And Third Causes Of Action," defendants devoted four pages of their summary judgment motion to plaintiffs' wrongful foreclosure and declaratory relief causes of action.

Cal.Rptr.2d 92, 831 P.2d 317].)" (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 81.)

>   B.   *Application of Relevant Principles*

"After a nonjudicial foreclosure sale has been completed, the traditional method by which the sale is challenged is a suit in equity to set aside the trustee's sale." (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 103 (*Lona*).) "To obtain the equitable set-aside of a trustee's sale or maintain a wrongful foreclosure claim, a plaintiff must allege that (1) the defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) the plaintiff suffered prejudice or harm; and (3) the plaintiff tendered the amount of the secured indebtedness or was excused from tendering. [Citation.]" (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062 (*Chavez*); *Onofrio v. Rice* (1997) 55 Cal.App.4th 413, 424 ["'as a condition precedent to an action by the trustor to set aside the trustee's sale on the grounds that the sale is voidable, the trustor must pay, or offer to pay, the secured debt, or at least all of the delinquencies and costs due for redemption, before he [or she] commences his [or her] action, or in his [or her] complaint'"].) The tender "requirement is based on the theory that one who is relying upon equity in overcoming a voidable sale must show that he is able to perform his obligations under the contract so that equity will not have been employed for an idle purpose. [Citation.]" (*Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 878 (*Dimock*), italics omitted; *Lona, supra,* 202 Cal.App.4th at p. 112.) "A 'tender' is an offer of performance in contrast to the actual performance itself." (1 Miller & Starr, Cal. Real Estate (3d ed. 2011) § 1:163, p. 691 (Miller & Starr), citing Civ. Code, § 1485; *Still v. Plaza Marina Commercial Corp.* (1985) 21 Cal.App.3d 378, 385.)

Plaintiffs properly alleged in their first amended complaint a tender of the amount defendants contended was due under the Note and Dead of Trust. In their second cause of action for wrongful foreclosure, the allegations of which they incorporated by reference in their third cause of action for declaratory relief, plaintiffs alleged that it

would be inequitable for a variety of reason for the trial court to require them to make a tender in order to proceed. If, however, the trial court required a tender, plaintiffs stated that they "hereby tender to [Bank] the undisputed amount to cure in the sum of $4,899,000 plus costs of foreclosure in return for being restored to their status as of the date the Notice of Sale was recorded which Plaintiffs have the financial ability to tender." Because plaintiffs offered to pay the Bank "all of the delinquencies and costs due for redemption," they satisfied the tender requirement for their action challenging the nonjudicial foreclosure sale. (*Chavez, supra,* 219 Cal.App.4th at p. 1062; *Onofrio v. Rice, supra,* 55 Cal.App.4th at p. 424; *Dimock, supra,* 81 Cal.App.4th at p. 878; *Lona, supra,* 202 Cal.App.4th at p. 112; 1 Miller & Starr, *supra*, § 1:163, p. 691.) Citing no cases on point, defendants assert that the allegation of tender is insufficient. The authorities suggest otherwise. (See *Haile v. Smith* (1896) 113 Cal. 656, 662 ["the averment in the answer that the tender of the money was made 'on or about the first day of March' was sufficient as against a general demurrer"]; *Hegler v. Eddy* (1879) 53 Cal. 597; *Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 513 ["In the absence of an allegation of tender or offer of tender, the trial court properly sustained the demurrers without leave to amend"]; *Casper Lumber Co. v. Stowell* (1940) 37 Cal.App.2d 58, 61 ["By its failure to allege a tender of performance by the seller the pleader has rendered its complaint demurrable"].)

Defendants cite no authority that holds that a trial court may require a plaintiff to deposit in an escrow account the disputed funds due in order to maintain an action challenging a nonjudicial foreclosure sale. Instead, they attempt to justify the trial court's order by relying on *Napue v. Gor-Mey West, Inc.* (1985) 175 Cal.App.3d 608, 621 and *Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 118, which cases hold that a tender is without legal effect if the offeror is without the money necessary to make good on the tender. Defendants do not cite a finding by the trial court that plaintiffs were unable to make good on their tender. Moreover, plaintiffs demonstrated their ability to make good on their tender by their deposit of $5 million in the client trust account of the law firm of Resch, Polster & Berger, LLP. Accordingly, the trial court erred in

9

sustaining without leave to amend plaintiffs' causes of action for wrongful foreclosure and declaratory relief.

## II. The Summary Judgment

### A. Standard of Review

"We review the grant of summary judgment de novo. (*Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356].) We make 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.' (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35].) A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) Once the defendant has made such a showing, the burden shifts back to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849, 853 [107 Cal.Rptr.2d 841, 24 P.3d 493].)" (*Moser v. Ratinoff* (2003) 105 Cal.App.4th 1211, 1216-1217.)

### B. Application of Relevant Principles

As set forth above, defendants concede that our holding in *U.S. Bank, supra,* 232 Cal.App.4th 639 that the trial court erred in ruling that the prepayment fee was to be calculated as of the Bank's June 24, 2011, acceleration of the indebtedness and not the actual prepayment of the indebtedness requires reversal of the trial court's summary judgment as to plaintiffs' breach of contract cause of action, but argue that there is no disputed material fact as to plaintiffs' accounting cause of action that requires reversal. As discussed above, defendants also contend that their motion for summary judgment did not address plaintiffs' wrongful foreclosure and declaratory relief causes of action.

10

The accounting cause of action did not concern the calculation of the prepayment fee, and, thus, summary judgment or summary adjudication was not precluded by our holding in *U.S. Bank, supra,* 232 Cal.App.4th 639. Instead, plaintiffs sought in their cause of action an "accounting of the amounts and calculations regarding the subject loan" to enable them to "determine the actual balance owed." In their separate statement of undisputed facts in support of their motion for summary judgment, defendants asserted with respect to plaintiffs' cause of action for an accounting that "[t]he [Bank] has provided an accounting to Plaintiffs in the manner in which funds in the Rollover Reserve and other amounts paid to the [Bank] on the obligations owed pursuant to the Note and Deed of Trust have been applied to Plaintiffs' outstanding loan balance." Plaintiffs responded that it did not dispute that "the [Bank] supplied this information only after Plaintiffs filed this lawsuit." That is, plaintiffs conceded, in effect, that the Bank provided all the relief that plaintiffs sought. Accordingly, because there is no disputed material fact concerning plaintiffs' cause of action for an accounting and plaintiffs received all the relief they sought, the trial court properly granted summary judgment or summary adjudication. (*Spitler v. Children's Institute International* (1992) 11 Cal.App.4th 432, 439 ["Summary judgment is appropriate where the record establishes as a matter of law that no material disputed issue of fact exists"].)

In its ruling on defendants' summary judgment motion, the trial court stated that plaintiffs had failed to comply with its demurrer ruling requiring them to deposit $5 million in an escrow account in order to proceed with their wrongful foreclosure and declaratory relief causes of action. The trial court's apparent intended meaning of that statement was that the trial court was not changing its order sustaining without leave to amend defendants' demurrer as to those causes of action. Alternatively, the trial court stated that even if it considered plaintiffs' deposit of $5 million in the client trust account of the law firm of Resch, Polster & Berger, LLP a deposit in escrow, "summary judgment would still be proper for the reasons stated above"—inter alia, the prepayment fee determination. Because we reversed the trial court's ruling on defendants' demurrer, we address the trial court's alternative ruling and hold that the alternative ruling was error in

11

light of our holding in *U.S. Bank, supra,* 232 Cal.App.4th 639 because plaintiffs' wrongful foreclosure and declaratory relief causes of action were based in part on the Bank's alleged erroneous calculation of the prepayment fee. Defendants do not argue that summary judgment or summary adjudication was otherwise appropriate on any other ground as to those causes of action or for any other reasons stated by the trial court.

## III. Disentitlement

Defendants contend that plaintiffs' appeal should be dismissed under the disentitlement doctrine because plaintiffs failed to pay an award of attorney fees the trial court awarded defendants under Code of Civil Procedure section 405.38[5] in connection with defendants' successful motion to expunge plaintiffs' notice of pending action. We decline to apply the disentitlement doctrine under the circumstances of this case.[6]

In granting defendants' motion to expunge plaintiffs' notice of pending action, the trial court ordered plaintiffs to pay to defendants attorney fees in the amount of $25,000 by September 30, 2013. The trial court's order granting the motion to expunge was based in part on the trial court's erroneous interpretation of the calculation of the prepayment fee under the Loan Documents. Plaintiffs failed to pay the attorney fees award.

Under the disentitlement doctrine, "[a] reviewing court has inherent power to dismiss an appeal when the appealing party has refused to comply with the orders of the trial court. [Citation.]" (*In re Z.K.* (2011) 201 Cal.App.4th 51, 63.) The doctrine

---

[5] Code of Civil Procedure section 405.38 provides, "The court shall direct that the party prevailing on any motion under this chapter be awarded the reasonable attorney's fees and costs of making or opposing the motion unless the court finds that the other party acted with substantial justification or that other circumstances make the imposition of attorney's fees and costs unjust."

[6] In their reply brief, plaintiffs contend that if we reverse the judgment in defendants' favor—as we did ultimately in part in *U.S. Bank, supra,* 232 Cal.App.4th 639—then we should reverse the award of attorney fees. We do not consider issues raised for the first time in a reply brief. (*SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 573, fn. 18.)

12

prevents a party from seeking assistance from the court if that party "stands in an attitude of contempt to legal orders and processes of the courts of this state. [Citations.]" (*MacPherson v. MacPherson* (1939) 13 Cal.2d 271, 277.) "Appellate disentitlement 'is not a jurisdictional doctrine, but a discretionary tool that may be applied when the balance of the equitable concerns make it a proper sanction.' [Citation.]" (*In re Z.K., supra,* 201 Cal.App.4th at p. 63.) The doctrine applies even if there is no formal adjudication of contempt. (*TMS, Inc. v. Aihara* (1999) 71 Cal.App.4th 377, 379.) The disentitlement doctrine "is particularly likely to be invoked where the appeal arises out of the very order (or orders) the party has disobeyed." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2014) ¶ 2:340, p. 2-203.)

This case concerns a multimillion dollar real estate transaction. The order with which plaintiffs have not complied was a $25,000 attorney fees award that was awarded in part on an erroneous basis. The appeal before us does not concern the $25,000 attorney fees award. Under the circumstances, it would be inequitable to dismiss plaintiffs' appeal based on their alleged misconduct.

13

## DISPOSITION

The trial court's ruling on defendants' demurrer as to plaintiffs' wrongful foreclosure and declaratory relief causes of action and its ruling on defendants' summary judgment motion as to plaintiffs' breach of written contract, wrongful foreclosure, and declaratory relief causes of action are reversed.  The trial court's ruling on defendants' summary judgment motion as to plaintiffs' accounting cause of action is affirmed.  The matter is remanded to the trial court for further proceedings.  Plaintiffs are awarded their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MOSK, Acting P. J.


We concur:


KRIEGLER, J.



KIRSCHNER, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.