Filed 9/8/21  Stiles v. Bank of New York Mellon CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DONA STILES,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>BANK OF NEW YORK MELLON et al.,<br><br>    Defendants and Respondents. | G058948<br><br>(Super. Ct. No. 30-2017-00936807)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Thomas A. Delaney, Judge.  Affirmed.

Graham & Associates and Anthony G. Graham for Plaintiff and Appellant.

Klinedinst, Ian A. Rambarran and Michael W. Carruth for Defendants and Respondents.

\*         \*         \*

Plaintiff Dona Stiles appeals from a judgment entered after the court sustained, without leave to amend, the demurrer of defendants Bank of New York Mellon (BONY), Bayview Loan Servicing, LLC (Bayview), and Seaside Trustee, Inc. (Seaside) to her fourth amended complaint. The complaint essentially alleged defendants wrongfully foreclosed on plaintiff's home because the promissory note had been transferred to Fannie Mae, which purportedly left defendants with no interest in the property. On appeal, plaintiff argues she pleaded sufficient facts to support claims for wrongful foreclosure, negligence, conversion, racketeering, fraud, and unfair competition (Bus. & Prof. Code, § 17200 et seq. (UCL)).[1] We disagree and affirm the judgment.

## FACTS

*The Fourth Amended Complaint*

In 2019, plaintiff filed the operative fourth amended complaint against defendants and BAC Home Loan Servicing, which is not a party to this appeal. The complaint alleged plaintiff purchased her home (the Property) in 2005, executing a promissory note (Note) and deed of trust (Deed of Trust) in the amount of $820,000. The Deed of Trust lists Countrywide Home Loans, Inc. (Countrywide) as the lender.

According to the complaint, Countrywide transferred its interest in the loan to Bank of America in 2008. In 2009, Bank of America then allegedly sold its interest in the loan to Fannie Mae with BONY acting as the trustee in the sale. The complaint alleged plaintiff was unaware of these two transfers, which are central to this appeal.

In 2011, Bank of America's subsidiary, BAC Home Loan Servicing, and plaintiff entered into a loan modification agreement including a balloon payment for $482,398. The complaint alleged "Bank of America and BAC Home Loan Servicing had no legal authority to execute a loan modification as they no longer held title to the . . . Property, since it had already been fully paid off under a Purchase and Sale

---

[1] All further statutory references are to the Business and Professions Code unless otherwise stated.

2

Agreement by Fannie Mae." The complaint further alleged Bank of America and BAC Home Loan Servicing collected unlawful payments on the modified loan from plaintiff until December 2013 "without ever disclosing that the Note had been sold to Fannie Mae, and that [their] interest had been paid off."

In 2013, Mortgage Electronic Registration Systems, Inc. (MERS), acting as a nominee for Countrywide, assigned all beneficial interest under the Deed of Trust and Note to BONY. According to the complaint, this was a fraudulent assignment because the Note had already been sold to Fannie Mae in 2009. Plaintiff believed "[d]efendants were conspiring to collect on her Note, in secret and without disclosure, as many times as possible."

In 2014, Bank of America sent a letter to plaintiff indicating it was transferring servicing of plaintiff's Note to Bayview. A few weeks later, BONY executed a limited power of attorney giving Bayview the authority to execute foreclosure proceedings. The complaint claimed "[n]one of these transfers were effective because at the time of the transfer, none of the transferors had any interest in the Note because it had been sold to Fannie Mae in 2009."

In the following months, defendants allegedly filed false claims with the mortgage insurance company and "used [a] fictitious loan number to file claims with HUD and with the insurance carrier, and to acquire title insurance because they knew there was a higher risk that their fraudulent mortgage and foreclosure documents would be discovered if they used the original loan number." In 2015, Bayview executed a substitution of trustee naming Seaside as the new trustee under the Deed of Trust. The substitution was recorded in April 2016. According to the complaint, the substitution was "void ab initio" because no Substitution of Trustee Affidavit was filed. In September 2016, Bayview then provided "fraudulently altered copies" of the Note and Deed of Trust to plaintiff.

3

Although the operative fourth amended complaint does not explicitly say plaintiff defaulted on her loan, her prior complaints noted she stopped making payments because she did not recognize the fictitious loan number and knew defendants had no right to collect payments. The fourth amended complaint similarly alleged "[p]laintiff relied on their representation that this was the loan number they sought to collect under, and *withheld money* that otherwise would have gone towards the mortgage on her house." (Italics added.) A notice of default and a notice of trustee's sale were recorded in 2016. At the end of the year, the Property was sold at a foreclosure sale to BONY.

Following the sale, BONY initiated unlawful detainer proceedings against plaintiff in 2017, and plaintiff filed a Chapter 7 bankruptcy petition a few months later. The court in the unlawful detainer case ultimately granted BONY's motion for summary judgment and ordered possession of the Property be restored to BONY.[2]

Based on the above allegations, the complaint alleged "none of the named [d]efendants owned the Note at the time of the foreclosure sale" because "the Note . . . was sold or transferred to Fannie Mae [in 2009]." Seaside also "was not lawfully appointed as trustee by any of the [d]efendants." The complaint concluded the foreclosure sale was fraudulent because "none of the [d]efendants . . . had the right to declare the default, cause notices of default to be issued or recorded, foreclose on [p]laintiff's interest in the . . . Property, or take possession . . . ." The complaint accordingly alleged causes of action for: (1) wrongful foreclosure; (2) negligence; (3) conversion; (4) racketeering; (5) fraud; and (6) unfair business practices under the UCL.

---

[2] Although the complaint indicates BONY filed the unlawful detainer action and a motion for summary judgment, it later states the court granted Bayview's motion for summary judgment. We assume this was an error and that the court granted BONY's motion for summary judgment.

4

*Defendants' Demurrers*

In August 2019, defendants filed a demurrer. With respect to the wrongful foreclosure claim, they argued plaintiff failed to allege a willfully oppressive fraudulent sale, prejudice, or tender. As to the negligence claim, defendants claimed they did not owe a duty of care to plaintiff because they merely "acted in their conventional role as a lending institution." They also argued plaintiff's conversion claim failed because she was not entitled to possession of the Property when she defaulted on her loan. With respect to the racketeering cause of action, they argued plaintiff did not plead any of the necessary elements to support the claim. They further claimed plaintiff did not meet the heightened pleading standards required to maintain her fraud cause of action. Finally, they argued the UCL claim failed because plaintiff could not establish her other causes of action.

*The Court's Order and Judgment*

In December 2019, the court sustained defendants' demurrer without leave to amend. First, the court held the complaint failed to plead a wrongful foreclosure claim because plaintiff did "not allege tender or grounds for excuse from tender." The court explained: "Where a borrower moves to set aside a trustee's sale on the ground the sale is voidable due to irregularities in the sale notice or procedure, the borrower must offer to tender the full amount owed on the debt." According to the court, plaintiff sought "to overcome a *voidable* sale on equitable grounds" by "alleging the sale is invalid due to defects in the foreclosure process." Citing *Javaheri v. JPMorgan Chase Bank, NA.* (C.D. Cal., Aug. 13, 2012, Civ. A. No. 2:10-CV-08185-ODW), 2012 WL 3426278, 2012 U.S. Dist. LEXIS 114510, the court noted California courts "have consistently rejected theories such as the one posited by [p]laintiff that [d]efendants no longer had any authority to foreclose on the Property because the Note was sold to a securitized loan trust." The court accordingly found plaintiff was not excused from the obligation to

5

tender. The court further held plaintiff did not allege facts to establish the foreclosure was wrongful.

Second, the court held the complaint failed to allege a negligence claim because "banks generally do not owe such a duty [of care] to borrowers in an arm's length transaction such as a loan or loan modification." To the extent plaintiff claimed defendants committed negligence in 2009 in connection with the origination of the loan, the court found the claim was time barred. Third, the court held the conversion claim failed "because [plaintiff] allege[d] no facts that establish her right to possession of the Property or the proceeds of the sale of the Property."

Fourth, the court found plaintiff failed to plead facts with sufficient particularity showing defendants participated in specific racketeering activities included in 18 U.S.C. § 1962 or a pattern of racketeering activity. Fifth, the court held plaintiff's fraud claim failed because she did not allege justifiable reliance. Although the complaint alleged defendants created a fictitious loan number and wanted plaintiff to rely on their representations that she needed to pay them, the court noted plaintiff did not believe defendants and withheld money. Finally, the court found plaintiff's UCL claim failed because the complaint did not allege any "unfair, fraudulent, or unlawful conduct prohibited by the UCL." The court accordingly entered judgment in February 2020.

## DISCUSSION

*Standard of Review*

"On appeal from a judgment after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment on whether the complaint states a cause of action as a matter of law. [Citation.] We give the complaint a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citation.] We deem all properly pleaded material facts as true. [Citation.] We must also accept as true those facts that may be implied or inferred from those expressly alleged." (*McMahon v. Craig* (2009) 176 Cal.App.4th 1502, 1508-1509.)

6

Not only does "'the plaintiff ha[ve] the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action,'" but he or she must also "'overcome[e] all of the *legal grounds* on which the trial court sustained the demurrer . . . .'" (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1490, italics added.) "The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken.'" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

"While the decision to sustain . . . a demurrer is a legal ruling subject to de novo review on appeal, the granting of leave to amend involves an exercise of the trial court's discretion." (*McMahon v. Craig*, *supra*, 176 Cal.App.4th at p. 1509.) "The plaintiff bears the burden of proving there is a reasonable possibility of amendment. [Citation.] The plaintiff may make this showing for the first time on appeal. [Citations.] [¶] To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.] The assertion of an abstract right to amend does not satisfy this burden. [Citation.] The plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44.) If the plaintiff fails to meet his or her burden, "there is no basis for finding the trial court abused its discretion . . . ." (*Id.* at p. 44.)

*Wrongful Foreclosure*

"The basic elements of a tort cause of action for wrongful foreclosure track the elements of an equitable cause of action to set aside a foreclosure sale. They are: '(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking

7

the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.'" (*Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 408.) "[M]ere technical violations of the foreclosure process will not give rise to a tort claim; the foreclosure must have been entirely unauthorized on the facts of the case." (*Id.* at p. 409.)

Here, the gravamen of plaintiff's claim is that defendants had no authority to foreclose on the Property because the Note was previously sold to Fannie Mae. Because defendants allegedly knew they had no such authority, the foreclosure actions were fraudulent. But plaintiff cannot avoid her obligation to tender. As a general rule, a homeowner in default must first tender payment of the obligation in full to achieve standing to challenge nonjudicial foreclosure proceedings. (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112 (*Lona*).) "'The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower].'" (*Ibid.*) The tender rules are strictly applied, and it is a debtor's obligation to make an unambiguous tender of the entire amount of the debt. (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 439.)

Recognized exceptions to the tender rule include when: (1) "the borrower's action attacks the validity of the underlying debt"; (2) a counterclaim offsets the amount due; (3) "it would be inequitable to impose such a condition on the party challenging the sale"; and (4) the trustee's deed is void on its face. (*Lona, supra*, 202 Cal.App.4th at pp. 112-113.) Relying on the first and third exceptions, plaintiff claims she is exempt from the tender requirements because defendants "are not the noteholder[s] and thus are owed no debt" and application of the tender rule would be inequitable. But plaintiff does not claim the Note or Deed of Trust evidencing the loan from Countrywide is void. At most, she disputes defendants' right to enforce them. The foreclosure process cannot be

8

attacked based on irregularities unless tender is made. (*Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 512.)

Citing *Lona, supra*, 202 Cal.App.4th 89, plaintiff argues "the tender rule cannot apply where the sale was, as here, void due to fraud and where the seller did not have the right to sell." But the facts in *Lona* are distinguishable from the instant case. In *Lona*, the borrower sued the lender and others to set aside a trustee's sale, claiming he was a victim of predatory lending because he did not understand the loan documents he signed. (*Lona,* at p. 95.) The borrower had an eighth-grade education from Mexico and lacked fluency in English. (*Id.* at pp. 97, 99.) The trial court granted summary judgment in favor of the lender on the ground that the borrower failed to tender the amounts due on the loan. (*Id.* at pp. 95, 98-99.) The Court of Appeal reversed because the borrower was attacking the validity of the underlying loan as unconscionable. (*Id.* at pp. 114-115.) Unlike the borrower in *Lona*, plaintiff did not allege the documents underlying her loan were illegal, invalid, or void. *Lona* accordingly fails to provide plaintiff any relief from the tender rule.

Plaintiff's reliance on *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868 (*Dimock*) is also misplaced. In *Dimock*, a new trustee replaced the former trustee after a substitution of trustee was recorded, but the former trustee conducted the trustee's sale. (*Dimock,* at p. 874.) The Court of Appeal held the sale was "void as opposed to merely voidable" because the former trustee had no power to convey the property. (*Id.* at p. 876.)

Relying on the void versus voidable distinction, plaintiff contends she was not required to tender the amount of the debt because the allegedly fraudulent assignments to Bank of America and then to BONY rendered the trustee's sale void. But "California's statutory nonjudicial foreclosure scheme (§§ 2924-2924k) does not require that the foreclosing party have a beneficial interest in or physical possession of the note." (*Shuster v. BAC Home Loans Servicing, LP, supra*, 211 Cal.App.4th at p. 511.) Plaintiff

9

also has not alleged facts demonstrating the assignments affected the substituted trustee's (Seaside's) authority to sell.

In any event, plaintiff did not allege how the purportedly fraudulent assignments caused harm to her because she does not allege the assignments interfered with her ability to pay the loan or that Fannie Mae would have refrained from foreclosure. (*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507-1508.) For the foregoing reasons, the court properly sustained the demurrer without leave to amend.[3]

*Negligence*

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." (*Mendoza v. City of Los Angeles* (1998) 66 Cal.App.4th 1333, 1339.) "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1095.)

Plaintiff's negligence claim fails for the absence of a legal duty of care. As the court correctly noted, "banks generally do not owe . . . a duty [of] care to borrowers in an arm's length transaction such as a loan or loan modification." (See also *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 206 ["No fiduciary duty exists between a borrower and lender in an arm's length transaction."].) "[A]s a general rule, a

---

[3] Relying on the request for judicial notice submitted with their demurrer, defendants note there is a "clear, concise chain of title" permitting defendants to initiate foreclosure proceedings. They argue the recorded documents "stand in direct contradiction to [plaintiff's] whole case – this unsupported claim of the 2009 transfer to Fannie Mae." If true, we agree these documents would be inconsistent with the complaint's allegations and provide yet another reason as to why plaintiff fails to state a wrongful foreclosure claim. But it is not clear that the court granted the request for judicial notice or if other recorded documents contradict defendants' assertion. We accordingly do not rely on this argument.

10

financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." (*Nymark v. Heart Fed. Savings & Loan Assn., supra*, 231 Cal.App.3d at p. 1096.)

Plaintiff argues a relationship between her and defendants, sufficient to create a duty of care, arose because defendants "converted [her] property to their own use and thus a constructive trust has arisen." Defendants accordingly had "a duty of care as a constructive trustee . . . ." She claims "[t]he facts as alleged support a claim for breach of that duty of care since [defendants] have sold on that property to a third party when they had no lawful right to do so since they had no legitimate interest in the Subject Property."

But the complaint did not advance this constructive trustee theory. Instead, the complaint alleged defendants "had a duty to exercise reasonable care and skill to maintain proper and accurate records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of records, including, but not limited to, disclosing to [p]laintiff any actions taken by them and refraining from taking any action against the interests of the [p]laintiff that they did not have the legal authority to take, and providing all relevant information regarding the [p]laintiff's Note and Deed of Trust . . . ." Because the complaint did not identify any special relationship between plaintiff and defendants or allege defendants exceeded their conventional roles, the court did not err by dismissing the negligence claim. Plaintiff's conclusory assertion that "[t]he complaint could be amended to more explicitly allege" defendants' duty of care as constructive trustees does not satisfy her burden of proving a reasonable possibility of amendment.

*Conversion*

"'"'Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or

11

disposition of property rights; and (3) damages.'"'" (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240.) The complaint alleged "[d]efendants, by and through the acts alleged herein, did and are currently exercising dominion and control over the property of [p]laintiff in taking [p]laintiff's property and proceeds from the sale of the same in the amount of $997,500." But the complaint did not allege facts supporting the first element of a conversion claim – plaintiff's right to possession of the Property or proceeds from the sale. Instead, the complaint suggests plaintiff was in default by alleging she "withheld money that otherwise would have gone towards the mortgage on her house." The court accordingly did not err by sustaining the demurrer.

*Racketeering*

To state a civil claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), plaintiffs must allege: "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." (*Sedima, S.P.R.L. v. Imrex Co., Inc.* (1985) 473 U.S. 479, 496.) RICO's racketeering activities are listed in section 1961, subdivision (1) of title 18 of the United States Code, as conduct that violates specific statutes. The list includes mail fraud, wire fraud, fraud on a financial institution, and extortionate credit transactions (18 U.S.C. § 1961, subdivision (1).) "To establish a pattern of racketeering activity, plaintiffs must allege at least two predicate acts that '"are interrelated by distinguishing characteristics"' [citation] and 'amount to or pose a threat of continued criminal activity.'" (*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 826.) For a RICO claim based on fraud, the pleader must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." (*Moore v. Kayport Package Exp., Inc.* (9th Cir. 1989) 885 F.2d 531, 541.)

The complaint alleged defendants violated RICO by "[u]sing a fraudulent loan number to obtain money and property in violation of 18 U.S. Code § 1029"; "[d]evising and intending to defraud [p]laintiff out of her money and property, and for the

12

purpose of executing this scheme, deposited multiple letters in a post office or authorized depository for mail matter in violation of 18 U.S. Code § 1341"; (3) [d]evising and intending to defraud [p]laintiff out of her money and property, transmitted or caused to be transmitted by means of wire, radio or television communication in interstate commerce writings, pictures and sounds for the purpose of executing such scheme in violation of 18 U.S. Code § 1343"; and (4) "[k]nowingly executing and attempting to execute a scheme or artifice to obtain assets and security, while it was under the custody and control of a financial institution, by means of false or fraudulent pretenses, representations and promises in violation of 18 U.S. Code § 1344."

Plaintiff's RICO claim fails because she failed to allege with specificity any other particular borrower(s) who were defrauded or otherwise victimized by a statutory predicate offense. She accordingly failed to properly allege a pattern of racketeering activity. (*Medallion Television Ent., Inc. v. SelecTV of California* (9th Cir.1987) 833 F.2d 1360, 1365 [existence of "pattern of racketeering activity" depends on whether acts are isolated or sporadic, as opposed to indicating a threat of continuing activity].)

Federal cases also have held foreclosure proceedings do not support RICO claims. "Plaintiff's RICO claim appears to be nothing more than conclusory allegations punctuated by threadbare recitals of the elements of a RICO cause of action. Plaintiff's attempt to cast a straightforward foreclosure proceeding as a pattern of racketeering activity is simply improper." (*Zacharias v. JP Morgan Chase Bank, N.A.* (N.D.Cal. No. 12–06525 SC, Feb. 13, 2013) 2013 WL 588757 at *3.) "[B]ecause the alleged damages arise from plaintiffs' conduct (failure to stay current on their loan payments), rather than from any action by defendants, plaintiffs cannot state a viable RICO claim." (*Rivac v. Ndex W. LLC* (N.D.Cal. No. C 13–1417 PJH, July 10, 2013) 2013 WL 3476659 at *8.) "The activity underlying plaintiff's claims was a simple loan transaction and foreclosure under a deed of trust. This is not the kind of unlawful activity contemplated by the Civil

13

RICO Act." (*Johnson v. Wachovia Bank FSB* (E.D.Cal. No. 10–2839 GEB, Sept. 17, 2012) 2012 WL 4092426 at *3, fn. 2.)

With respect to the possibility of amendment, plaintiff generally claims "funds unlawfully obtained were . . . used to engage in the [defendants'] business – the provision of loans to their customers throughout the United States, a fact of which this Court could take judicial notice." She contends she could have amended "[i]f the [court] needed further amplification." This vague and conclusory allegation does not satisfy plaintiff's burden of proving a reasonable possibility of amendment. The court accordingly did not err by sustaining defendants' demurrer to plaintiff's RICO claim.

*Fraud*

To state a fraud cause of action, a plaintiff must allege "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." (*Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 990.) Fraud must be pleaded with particularity. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 184.) This means the complaint must include specific facts showing """"how, when, where, to whom, and by what means the representations were"""" made. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.) In a cause of action made against a corporation, the complaint must also state the names of the people who allegedly made the misrepresentations, their authority to act on behalf of the corporation, to whom the people spoke, the statements made, and the dates of the statements. (*Ibid.*)

In addition to the purportedly "fraudulent" assignments to Bank of America and BONY, the complaint alleged defendants used a "counterfeit" Note that "included a handwritten fictitious loan number, and was not certified or notarized and did not contain 'certification' stamps from any escrow company on any page, including the signature page, which was endorsed in blank with an undated, stamped signature ostensibly of David A. Spector, as Managing Director for Countrywide Home Loans, Inc." According

14

to the complaint, Spector was not employed by defendants on the date of the signature. Among other things, the complaint further alleged defendants omitted to state that they did not have authority to foreclose on the Property or that the Note was sold to Fannie Mae in 2009.

Despite these allegations, the court correctly held the complaint failed to adequately plead justifiable reliance. The complaint merely alleged "[p]laintiff relied on their representation that this was the loan number they sought to collect under, and withheld money that otherwise would have gone towards the mortgage on her house." In other words, plaintiff apparently failed to pay her mortgage because she thought she was being defrauded. If true, this cannot constitute justifiable reliance because plaintiff withheld money and did not rely on defendants' purported misrepresentations to induce payment to them.

Plaintiff claims she "'had no reason to suspect wrongdoing until she was informed of the fraud by her counsel during the unlawful detainer action filed against her after foreclosure by' defendants." She contends she "could have amended the [c]omplaint to add these facts." But even if these facts were fleshed out in a fifth amended complaint, they would not address the issue of justifiable reliance. The court accordingly did not err by sustaining the demurrer without leave to amend.

*Unfair Competition Law*

Section 17200 prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice . . . ." "By proscribing 'any unlawful' business act or practice [citation], the UCL '"borrows"' rules set out in other laws and makes violations of those rules independently actionable. [Citation.] However, a practice may violate the UCL even if it is not prohibited by another statute. Unfair and fraudulent practices are alternate grounds for relief." (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370.)

15

Here, plaintiff premises her UCL claim on her other causes of action. Because she had not met the pleading requirements for those claims, the court properly sustained defendants' demurrer to the UCL cause of action. (*Smith v. State Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 718.)[4]

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.


THOMPSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.

---

[4] In addition to attacking the substance of the complaint, defendants argue most of plaintiff's claims are time-barred. They contend the "causes of action for negligence, racketeering, fraud, and violations of [section 17200] all accrued in 2009 when (based on [plaintiff's] allegations) Countrywide sold the loan trust containing her loan to Fannie Mae." Because plaintiff filed the instant action in 2017, defendants argue her claims are time-barred but do not identify the specific limitation periods. They also suggest the court agreed and found five of the six causes of action were time-barred, but the court's order only addresses the statute of limitations with respect to the negligence claim. Because we affirm on the merits, we need not address the issue.